**Maria CAMARENA, Armando Camarena, and Jose Camarena, Plaintiffs,**

v.

**Doris MEISSNER, Commissioner, U.S. Immigration and Naturalization Service, Defendant.**

**No. C 99–2473 SI.**

United States District Court, N.D. California.

Dec. 22, 1999.

Jonathan M. Kaufman, Kaufman Law Office, San Francisco, CA, for plaintiffs.

Suzanne G. Ramos, Robert S. Mueller, III, U.S. Attorney's Office, San Francisco, CA, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT AND PERMANENT INJUNCTION

ILLSTON, District Judge.

On December 10, 1999, the Court heard argument on plaintiffs' motion for a preliminary injunction. Because the parties have previously agreed that resolution of the preliminary injunction motion would be dispositive of the case, because the relief requested in the preliminary injunction motion is the same as the relief requested in the complaint, and because the evidence that this Court may consider in reviewing the INS's decision is limited to the administrative record, this Court construes the motion for a preliminary injunction as a motion for a permanent injunction and for summary judgment. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS plaintiffs' motions.

### BACKGROUND

Plaintiffs Maria Luz Camarena Villegas ("Maria Luz"), Armando Camarena Villegas ("Armando") and Jose Camarena Villegas ("Jose") are citizens of Mexico and the beneficiaries of immigrant visa petitions filed by their father, who obtained his law-

ful permanent resident status under 8 U.S.C. § 1160(a). On November 29, 1990, Congress enacted the Immigration Act of 1990, which established a family unity program under which qualifying spouses and children of lawful permanent residents are allowed to remain and work in the United States under a grant of voluntary departure. 8 U.S.C. § 1255a (1999).

On February 22, 1996, plaintiffs applied for benefits under the family unity program. Accompanying these applications, among other evidence,[1] plaintiffs submitted notarized letters from employers stating that they had employed plaintiffs beginning in April 1988.[2]

On April 23, 1996, plaintiffs' family unity and employment applications were approved, and they were granted voluntary departure and employment authorization through April 28, 1998.

On January 6, 1998, plaintiffs applied for extensions of family unity benefits and renewal of employment authorization. Accompanying their applications, plaintiffs submitted additional evidence documenting their residence in the United States.[3]

On July 26, 1999 the INS sent a Notice of Intent to Deny the I–817 to plaintiffs, citing a conflict between plaintiffs' family unity applications, which stated that they had entered and been living in the United States since April 1988, and separate petitions that their father had filed for them in 1992, which claimed that as of 1992 plaintiffs were living in Mexico and had never been in the United States.[4] AR/MC 12, AR/AC 12, AR/JC 18. The INS letter instructed the plaintiffs that they could submit additional evidence in support of their application.

In response, on August 17, 1999, plaintiffs submitted evidence which included a sworn declaration by their father stating that at the time that he had filed the 1992 petitions his children were living with him in the United States, that he told an immigration consultant who was preparing his petitions that he was afraid to inform the INS of his children's presence in the United States "because I did not want my children to be arrested and deported," and that the immigration consultant agreed to state that his children were living in Mexico, which would allow them to get their visas sooner. AR/AC 8–9, AR/MC 8–9,

1. Armando also submitted a letter from Matias Villegas stating that he had employed Armando "year round as a full-time, cauliflower harvester" from 1991 until at least 1996. AR/AC 35. Maria Luz submitted a letter from Sharon Miller, ESL Coordinator at the Salinas Adult Education School, stating that she registered in an English class there in 1992, an identification card from the school from the 1994–95 year, a certificate of achievement for completing an English class at the school dated September 23, 1993, and some kind of invoices with her name on it from 1993 to 1996. AR/MC 59–66. The records submitted by Jose in connection with his application are either missing from the Administrative Record or are included in the wrong sequence.

2. A notarized letter from Domitila Ruiz stated that she had employed Maria Luz to care for her child since April 1988, paying her $250 per month. AR/MC 51. A notarized letter from Modesto Negrete stated that Jose had worked for his company (Rancho La Fe) performing agricultural services from April 1988 to December 1989 and that Armando had worked there from April 10, 1988 through

December 15, 1990. Both were paid $1.80 per box and $2.50 per caneria. AR/AC 34; Pl.Ex. G.

3. Armando submitted pay stubs documenting employment in the United States during 1996 and 1997 and a letter from the Salinas Adult Education School of the Salinas Union High School District stating that he had been a student there from 1992 to 1993. AR/AC 20–23. Maria Luz submitted an identification card from the Salinas Adult Education School for 1993–94 and paycheck stubs from 1996 and 1997. AR/MC 22–32. Jose submitted payroll records from 1990 through 1997, completed tax returns from 1988 through 1997, W–2 forms from 1992 through 1997, and a letter stating that he had been employed full-time by Fresh Western Harvesting, Inc. from May 16, 1991 through October 31, 1995. AR/JC 31–78.

4. These petitions were I–130s (Petition for Alien Relative), which were filed on May 13, 1992. AR/MC 18–19; AR/AC 18–19; AR/JC 24–25.

AR/JC 9–10. Plaintiffs also submitted the following: (1) a letter from Reverend Manuel Canal of Christ the King Catholic Church stating that plaintiffs have been parishioners and involved in parish activities since 1988, when they arrived in Salinas; (2) a letter from the ESL Coordinator of the Salinas Adult School stating that Armando had attended that school from 1992 to 1993; (3) California DMV identification cards that had been issued to Maria Luz on April 27, 1992 and to Jose on June 25, 1991; and (4) paychecks and payroll records for Jose from 1990 and 1991. AR/AC 10–11; AR/MC 10–11; AR/JC 11–17.

On September 14, 1999 the INS denied plaintiffs' applications for renewal of their benefits under the family unity program. The INS dismissed plaintiffs' father's declaration on the ground that he was biased, that the 1992 application as well as the current declaration were both signed under penalty of perjury, and that no rotation appeared on the I–130 in support of his claim that an immigration consultant had helped him prepare it.[5] The INS further stated that the letter from plaintiffs' priest was vague and non-specific regarding the eligibility date of December 1, 1988; that the letter from the Adult School applied only to the time period of 1992 to 1993 and was not on official letterhead; and that the payroll records, paychecks and California identification cards did not demonstrate continuous residence prior to December 1, 1988. AR/MC 3–4, AR/AC 4, AR/JC 3–4.

Plaintiffs filed a complaint in this Court seeking a declaratory judgment that they are entitled to renewal of family unity status. They now seek an injunction finding that plaintiffs are eligible for family unity benefits, requiring the INS to issue them employment authorization, and prohibiting the INS from deporting them.

**5.** The INS alleges that the I–130 form requires that the completion of the form by an

## LEGAL STANDARD

■ A decision by the INS may be set aside by a reviewing court if the decision was an abuse of discretion. *See Occidental Engineering Co. v. INS*, 753 F.2d 766, 768 (9th Cir.1985). An agency abuses its discretion if its decision is "arbitrary, irrational, or contrary to law," *Lopez–Galarza v. INS*, 99 F.3d 954, 960 (9th Cir.1996) (internal quotation marks and citation omitted), or if "it fails to offer a reasoned explanation for its decision, ... or distorts or disregards important aspects of the alien's claim." *Gutierrez–Centeno v. INS*, 99 F.3d 1529, 1531 (9th Cir.1996) (internal quotation marks and citation omitted). "The agency must state its reasons for its decision and demonstrate that it considered all appropriate factors." *Paredes–Urrestarazu v. INS*, 36 F.3d 801, 807 (9th Cir.1994).

■ Questions of law, such as whether the INS applied the proper legal standard, are reviewed de novo; however, the agency's interpretation of a statute that it is charged with administering is entitled to deference. *Id.* The INS's factual determinations are reviewed under the substantial evidence standard. *Singh v. INS*, 113 F.3d 1512, 1514 (9th Cir.1997). Under this standard, reversal is justified only if the evidence is "so compelling that no reasonable factfinder could fail to find the facts were as the alien alleged." *Id.* " 'Substantial evidence' means more than a mere scintilla but less than a preponderance; it means such that a reasonable mind might accept as adequate to support a conclusion." *Baria v. Reno*, 94 F.3d 1335, 1340 (9th Cir.1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995)).

■ Summary judgment is warranted when no genuine and disputed issues of material fact remain; or, when viewing the evidence in the light most favorable to the non-moving party, the movant is clearly

individual other than the petitioner be noted.

**1048**

entitled to prevail as a matter of law. Fᴇᴅ.R.Cɪᴠ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1288–89 (9th Cir.1987). Disposition of an action by summary judgment is appropriate in an action for review of an administrative proceeding, where the facts are those contained in the record below and are not subject to dispute.

■ A court may issue a permanent injunction if the plaintiffs have established "that they will sustain irreparable injury and that remedies at law are inadequate." *Walters v. Reno,* 145 F.3d 1032, 1048 (9th Cir.1998). "[T]he scope of the injunction must be no broader than necessary to provide complete relief" to the plaintiffs. *Easyriders Freedom FIGHT v. Hannigan,* 92 F.3d 1486, 1496 (9th Cir.1996).

### DISCUSSION

Section 301(a) of the Family Unity Provision of the Immigration Act of 1990 provides that an eligible immigrant who entered the United States before December 1, 1988 and who resided in the United States on that date "may not be removed or otherwise required to depart" and "shall be granted authorization to engage in employment." Under § 301(b)(1), an eligible immigrant is a "qualified immigrant who is the spouse or unmarried child of a legalized alien." [6] Through this Act, "Congress unequivocally has mandated that eligible immigrants are entitled to: (1) a stay of deportation, (2) authorization to be employed in the United States, and (3) documentary evidence of that authorization." *Hernandez v. Reno,* 91 F.3d 776, 780 (5th Cir.1996).

The regulations implementing this statute provide that an alien can demonstrate eligibility for the family unity program "if he or she establishes: (1) That he or she entered the United States ... as of December 1, 1988 ... and has been continu-

ously residing in the United States since that date." 8 C.F.R. § 236.12 (1999). An individual applicant for family unity benefits must file a Form I–817, along with a required fee, with the appropriate INS service center. 8 C.F.R. § 236.14(a) (1999). Form I–817 designates the following as evidence that may demonstrate an individual's date of entry into the United States: employment records such as pay stubs, W–2 forms or letters from employers signed under penalty of perjury and stating exact dates of employment; rent receipts, utility bills or letters from companies that specify dates of service; school records which show periods of school attendance; hospital or medical records; letters from churches or other organizations that show inclusive dates of membership, establish how the author knows the individual, and state the address where the individual resided during membership; and any other relevant documents. Def. Opp., Ex. A (Form I–817). "The service center director has sole jurisdiction to adjudicate an application for benefits under the Family Unity Program. The director will provide the applicant with specific reasons for any decision to deny an application." 8 C.F.R. § 236.14(b) (1999). If an application is approved, the alien "will receive voluntary departure for 2 years" and may apply for employment authorization, which will be granted for the period that the alien is entitled to voluntary departure. 8 C.F.R. § 236.15(c) & (d) (1999). After this time expires, the alien must apply for an extension of voluntary departure, which "may be granted if the alien continues to be eligible for benefits under the Family Unity Program." 8 C.F.R. § 236.15(e) (1999). When an applicant applies for an extension of family unity benefits, he or she is only required to submit evidence that establishes continued eligibility, not to re-submit evidence that has already been received by the INS with a prior application. 8 C.F.R. § 236.15(f) (1999).

**6.** The INS does not dispute that plaintiffs are "eligible immigrants," but based its denial of their petitions for renewal of family unity benefits on their failure to demonstrate that they had resided in the United States since 1988.

■ The statute and regulations do not specify the showing that an individual must make to establish presence in the United States before the date of eligibility. However, if an individual *is* eligible, the grant of family unity benefits is mandatory, not discretionary.

■ Plaintiffs characterize the INS denial of their renewal application as arbitrary and capricious, both because the INS's conclusion is not supported by a review of the evidence as a whole and because the INS failed to consider much of the evidence that they had filed. Before the INS rendered its decision, plaintiffs had submitted the following evidence documenting their residence in the United States: (1) all three submitted letters from employers signed under penalty of perjury stating that they had begun working for them in April 1988;[7] (2) all three submitted letters from their priest stating that they had been parishioners since moving to Salinas in 1988; (3) Maria Luz and Jose submitted California DMV identification cards, obtained on April 27, 1992 and June 25, 1991 respectively; (4) Jose submitted documentation of employment including pay stubs and W–2 forms for the years 1990 through 1997, and Armando and Maria Luz did the same for employment in 1996 and 1997; and (5) letters, certificates and school identification cards established that Maria Luz attended the Salinas Adult Education School beginning in 1992 and continuing through 1995 and that Armando attended during the 1992–1993 school year. The evidence upon which the INS relied to find that plaintiffs were not entitled to family unity benefits was their father's statement, submitted on May 13, 1992, that his children were living in Mexico and had never been to the United States, which was contradicted by his later affidavit.

In 1996, the INS had determined that the evidence that plaintiffs had submitted to document residence in the United States since December 1, 1988 was sufficient to establish their eligibility for family unity benefits. The only evidence that caused the INS to reconsider this determination, and the only evidence that the INS decision cited as contradicting plaintiffs' evidence of continuous residence, was their father's May 13, 1992 petition. However, the INS decision failed to discuss or even acknowledge the fact that plaintiffs had submitted documentary evidence that demonstrated that their father's representation in his May 13, 1992 petition that they had never been in the United States could not have been true: most notably, the California DMV identification cards obtained prior to that date.[8] Moreover, the INS decision entirely ignored the letters that were signed under penalty of perjury by plaintiffs' employers stating that they had worked for them beginning in April 1988. Finally, the decision dismissed the letter from plaintiffs' priest attesting to plaintiffs presence in the United States since 1988 on the ground that it failed to refer to the specific date of December 1, 1988, despite the fact that it nonetheless contradicted their father's May 1992 representation.

Given that the showing that plaintiffs made in 1996 was sufficient to establish their residence in the United States since December 1, 1988, and that the only contrary evidence in the record was shown to be false, there is not substantial evidence in the record to support the INS's conclusion that plaintiffs were ineligible for family unity benefits. Accordingly, this Court holds that the INS abused its discretion in denying plaintiffs' application for an extension of family unity benefits.

7. While Jose's letter showing that employment began in 1988 covered the period only until December 1989 and Armando's letter showed employment only until December 1990, both submitted additional letters covering later periods of employment (Armando from 1991 through at least 1996, and Jose from May 1991 through October 1995).

8. Jose also submitted paycheck stubs that demonstrated his presence in the United States prior to May 1992.

In addition to declaratory relief, plaintiffs have requested an injunction requiring the INS to issue them family unity benefits and enjoining the INS from deporting them. This Court concludes that plaintiffs have met the standard for injunctive relief. Without employment authorization, they cannot legally hold jobs and work in the United States. As the INS acknowledges, denial of work authorization can constitute irreparable harm. *See National Center for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1369 (9th Cir.1984).

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS plaintiffs' motion for summary judgment and for a permanent injunction. A declaratory judgment that plaintiffs are eligible for family unity benefits under § 301 of the Immigration Act of 1990 is hereby entered. Defendant is hereby ordered to take all necessary and proper steps to process plaintiffs' applications for extension of voluntary departure and employment authorization forthwith, and enjoined from initiating deportation proceedings before plaintiffs' applications are approved.

**IT IS SO ORDERED.**