**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALPHONSINE NGONGO,
                    *Petitioner,*

v.

JOHN ASHCROFT, Attorney General,
                    *Respondent.*

No. 03-70903

Agency No.
A73-887-791

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 12, 2004*
San Francisco, California

Filed February 14, 2005

Before: Diarmuid F. O'Scannlain, Eugene E. Siler, Jr.,**
and Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Siler;
Dissent by Judge Hawkins

---

*The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2)(C).

**The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

## COUNSEL

Victor M. Castro, Castro & Flores-Cerul, San Jose, California, for the petitioner.

Peter D. Keisler, Assistant United States Attorney General, Civil Division; David V. Bernal, Assistant Director; and Andrew C. Maclachlan, Office of Immigration Litigation, Washington, DC, for the respondent.

## OPINION

SILER, Circuit Judge:

Alphonsine Ngongo, a native and citizen of the Congo, petitions for review of the decision of the Board of Immigration Appeals ("BIA") ordering her deported as an alien who procured her visa to remain in the United States by marital fraud. 8 U.S.C. § 1251(a)(1)(G)(ii).[1]

In 1991, Ngongo entered the United States under a student visa. In 1994, she married United States citizen Walden Chambers, who subsequently filed a Petition for Alien Relative ("I-130") on her behalf in 1995. He later withdrew the I-130, claiming that the marriage was fraudulent. However, in 1996, Chambers filed a second I-130 on her behalf. Despite Ngongo's request, the petitions were never consolidated, so Ngongo had two actions simultaneously proceeding through the Immigration and Naturalization Service ("INS").

During the deportation hearings before the Immigration Judge ("IJ") concerning the first petition, Ngongo and Chambers offered testimony to rebut the contention that their marriage was fraudulent. However, the IJ made Ngongo testify first, with Chambers out of the room, and then allowed Chambers to testify because the credibility of both spouses was at issue.

The first petition was denied, and the IJ issued a decision

---

[1] Currently 8 U.S.C. § 1227(a)(1)(G)(ii).

finding that the INS proved that the marriage was fraudulent. Likewise, the INS District Director denied her second petition. Both decisions were separately appealed. On review, the BIA reversed and remanded the District Director's determination on the second I-130. However, the BIA affirmed, without opinion, the IJ's decision regarding the first petition. At that time, the BIA did not have the appeal regarding the second petition before it anymore, since it had been remanded to the District Director.

[1] Ngongo argues that the BIA deprived her of the opportunity to pursue an adjustment of status when it affirmed the IJ's decision on the first petition before the District Director adjudicated the pending second I-130. In certain instances, a single BIA member, rather than a three-member panel, may affirm IJ decisions without opinion, thereby making the IJ's decision the final agency determination. *See* 8 C.F.R. §§ 3.1(a)(7) and (e)(4) (2003).[2] Single-member affirmance is permitted if the issue is "squarely controlled" by BIA or federal court precedent or "the factual and legal questions raised on appeal are so insubstantial that three-member review is not warranted." 8 C.F.R. §§ 3.1(a)(7)(ii)(A)-(B) & (e)(4)(i)(A)-(B) (2003). These streamlining procedures do not themselves violate Ngongo's due process rights. *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 848 (9th Cir. 2003). Because streamlining procedures were used, we review the IJ's decision directly. *Id.* at 851. Questions of due process violations in INS proceedings are reviewed *de novo*. *Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1222 (9th Cir. 2002).

[2] The BIA did not err by affirming the IJ's decision on the first petition before the second I-130 was fully adjudicated. Even if the District Director approved the I-130 upon remand, Ngongo would not have been automatically entitled to an adjustment of status. *See Agyeman v. INS*, 296 F.3d 871, 879 (9th Cir. 2002). Approval of the "I-130 petition does

---

[2]Currently 8 C.F.R. §§ 1003.1(a)(7) and (e)(4), respectively.

not automatically entitle the alien to adjustment of status as an immediate relative of a United States citizen." *Id.* The IJ would still have to determine whether to confer that status upon her. *Id.* Moreover, Ngongo never raised to the Board, before or after the remand of the second I-130 petition, an argument that deportation proceedings must await adjudication of that petition. The dissent argues that Ngongo's request to consolidate petitions in her appeal to the BIA translates into a request that the Board should stay ruling on the appeal in this case until her I-130 petition was adjudicated. However, Ngongo did not ask for, nor even suggest such a stay. Hence, she did not give the Board the opportunity to address the issue, and because she failed to exhaust her administrative remedies, we have no jurisdiction to adjudicate this claim. Further, as a matter of due process, Ngongo has not demonstrated a defect of process that so deprived her of a full and fair hearing as to affect the outcome of the agency's proceedings. Accordingly, the BIA's streamlining procedures did not violate Ngongo's due process rights. *See Falcon Carriche*, 350 F.3d at 848.

Furthermore, Ngongo did not have an absolute constitutional right to testify at a time of her own choosing during the deportation hearings. Deportation hearings are civil, not criminal, proceedings, so many of the protections afforded criminal defendants are unavailable to Ngongo. *See El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 751 (9th Cir. 1991). To prove a due process violation, Ngongo must show that she was prejudiced by the IJ's ruling that she must testify before her husband did so, and she must show that the prejudice "may have affected the outcome of the proceedings." *Reyes v. Ashcroft*, 358 F.3d 592, 596 (9th Cir. 2004). Furthermore, the IJ was "empowered to exercise a reasonable degree of latitude in conducting [Ngongo's] deportation . . . proceedings." *Ramirez-Durazo v. INS*, 794 F.2d 491, 496 (9th Cir. 1986).

**[3]** Because the IJ needed to compare Ngongo's testimony with Chambers's testimony, requiring Ngongo to testify first

was not unreasonable. Ngongo's counsel still argued her case, and she cannot demonstrate that she was prejudiced by presenting the witnesses in a different order than originally planned. Even though she contends that the IJ "dictate[d]" how she could present her case, the IJ acted well within his discretion. This lack of prejudice necessarily implies that Ngongo's counsel was not so inadequate that the outcome of the proceedings would have been any different.

**PETITION DENIED.**

---

HAWKINS, Circuit Judge, dissenting:

This case brings Abbott & Costello's "Who's on First" routine to life. A woman seeks a visa as the spouse of a United States citizen. Her husband first signs the application on her behalf, then withdraws it saying the marriage was a sham, only to file a second application, saying the withdrawal was done in haste and that the marriage was legitimate all along. In the meantime, making use of the husband's initial withdrawal, the government seeks and obtains a removal order based on marriage fraud. She appeals the removal order to the BIA. When her visa application is denied, she appeals that also and asks the BIA to consolidate the two obviously related matters. Without explanation, the BIA fails to act on Ngongo's efforts to consolidate and her cases proceed on two tracks, as two separate appeals. Not only does the BIA fail to act on Ngongo's consolidation request, it sends the visa denial to a BIA merits panel, and, at nearly the same time, sends the removal appeal to a single BIA member for summary affirmance.

If the failure to consolidate was strange, the result in the two appeals was even stranger. The BIA merits panel reversed and remanded the visa denial, finding "no evidence in the record of proceedings of the petitioner's alleged attempt to

enter into a fraudulent marriage . . . [t]he decision to deny the petition under section 204(c) is not supported by substantial and probative evidence." Some three months later, with no mention of the pending visa determination on remand, a single BIA judge summarily affirmed the removal order based on the existence of marriage fraud.

Here is what the BIA's own regulations require of it in connection with the practice of single-member consideration ("streamlining"):

> The single Board Member to whom a case is assigned may affirm the decision of the Service or the Immigration Judge, without opinion, if the Board Member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; *and that*:

> (A) the issue on appeal is *squarely controlled* by existing Board or federal court precedent and does not involve the application of precedent to a *novel fact situation*; or

> (B) the factual and legal questions raised on appeal are *so insubstantial* that three-Member review is not warranted.

8 C.F.R. § 1003.1(a)(7)(ii) (emphasis added).

In *Falcon Carriche v. Ashcroft*, 350 F.3d 845 (9th Cir. 2003), we explained that although these streamlining procedures are not a *per se* violation of an immigration petitioner's due process rights, there may very well be instances where the BIA's decision to streamline a case under those procedures violates the agency's own statutory guidelines. *See Falcon Carriche*, 350 F.3d at 854. In the context of non-discretionary

determinations like "an asylum case or a cancellation of removal case in which the IJ's decision is not based on a discretionary factor," we retain jurisdiction to review such decisions to streamline for abuse of discretion. *Id.* at 855.

Instances where such an analysis is possible or necessary will be rare, however, because in most cases, the question of whether the BIA abused its discretion by streamlining will be mooted by our decision on the merits of the case. *Id.*; *cf. Tokalty v. Ashcroft*, 371 F.3d 613, 621 n.7 (9th Cir. 2004) (streamlining inappropriate where case is not insubstantial and precedent not sufficiently established for single BIA member to summarily affirm without opinion).

If we grant relief from the IJ's decision and remand, streamlining will always have been an abuse of discretion; likewise, if we uphold an IJ's determination, any error would be harmless and the decision to streamline will not have affected the outcome of our decision. In both cases, relief on the merits preempts any independent relief from the streamlining decision. *See Falcon Carriche*, 350 F.3d at 855 (noting that in this context, "[t]he decision to streamline becomes indistinguishable from the merits. Were we to find an error, we would either grant relief if permitted or simply remand to the BIA to proceed in a manner consistent with our opinion."). In contrast, this case is a unique instance in which the analyses do not collapse; one, in fact, precludes the other.

The BIA decision to streamline Ngongo's visa application was made on full knowledge of the simultaneous removal proceedings. Ngongo's brief plainly requested that the matters be consolidated. Despite the "substantial legal and factual questions" raised by the remand of the visa rejection that could potentially affect the outcome of the removal appeal, the BIA proceeded to streamline. *Compare* 8 C.F.R. § 1003.1(a)(7)(ii)(B). In a classic case of the right hand not knowing — or refusing to know — what the left is doing, the BIA's reversal of the visa denial reached factual conclusions

directly opposed to the IJ's findings in the removal hearing that it summarily upheld, i.e., that there *was* substantial and probative evidence of a fraudulent marriage.

If all that were not enough, it is also far from clear that the legal issue in this appeal — whether removal proceedings must be stayed pending the outcome of a visa petition — was "squarely controlled" by BIA or Ninth Circuit precedent or that any precedent had thus far been applied to similar facts. *See* 8 C.F.R. § 1003.1(a)(7)(ii)(A). In fact, the government unequivocally conceded in its brief to this court that there is no legal authority on point.

On these facts, the BIA abused its discretion by streamlining Ngongo's removal appeal, which should preclude us from reaching the merits of the appeal. Although we are limited to the Administrative Record before us on appeal, *see Fisher v. INS*, 79 F.3d 955, 963 (9th Cir. 1996) (en banc), this record contains enough evidence of another BIA panel's contrary factual findings and legal conclusions to place us in the untenable position of having to choose which facts we like best. *See Lising v. INS*, 124 F.3d 996 (9th Cir. 1997) (holding that this court is not precluded from taking judicial notice of an agency's own records).

The majority argues Ngongo failed to exhaust her administrative remedies because she never argued that deportation proceedings should await adjudication of her I-130 petition. I cannot agree. The very first paragraph of Ngongo's brief to the BIA requests consolidation of the appeals, and argues:

> Consolidation of this appeal . . . would promote judicial economy and the interests of justice since [Ngongo's] eligibility for relief is dependent on the disposition of the appeal of the District Director's decision. Failure to resolve the appeal would effectively render moot the appeal of the [IJ's] oral decision dated October 6, 1997.

This language was certainly sufficient to put the BIA on notice of the other closely-related proceeding, the need for consolidation, and the potential impact of one proceeding on the other. *See Socop-Gonzales v. INS*, 272 F.3d 1176, 1183-1186 (9th Cir. 2001) (en banc). We clearly have jurisdiction to review the BIA's denial of the motion to consolidate and its decision to streamline her appeal.[1]

Moreover, the majority misses the point. I do not think we should rule that the deportation proceedings should have waited on the adjudication of Ngongo's I-130 petition, or otherwise entertain the merits of her appeal. Rather, I believe a fundamental error has occurred in the agency's processing of these two appeals, leading to an obviously inconsistent result. The BIA erred by streamlining the case without sorting through the mess it made, and we should remand to give the BIA an opportunity to correct its own errors brought about by its refusal to consolidate such obviously intertwined cases.

Without even asking for an explanation, the panel majority seems content to approve the removal (deportation) of someone the agency says has entered into a fraudulent marriage, while the same agency finds no proof that fraudulent marriage exists. No responsible, sane system of justice should sanction such a result. Alphonsine Ngongo is either eligible to proceed with her visa application or removable because of fraudulent marriage — she cannot be both.

---

[1]The majority suggests Ngongo should have also notified the BIA of the decision to remand the visa petition, presumably by a motion to supplement, as the briefing before the BIA was already complete when this event occurred. We do not require an alien to exhaust administrative remedies with respect to events that occur after briefing to the BIA is complete, particularly via discretionary motions such as motions to reopen or motions to supplement. *See Alcaraz v. INS*, 384 F.3d 1150, 1158-60 (9th Cir. 2004).