**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MIRIAM ELIU YEPEZ-RAZO,
                    *Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney
General,
                    *Respondent.*

No. 03-72005

Agency No.
A70-202-347

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 18, 2005—Pasadena, California

Filed April 24, 2006

Before: Procter Hug, Jr., Harry Pregerson, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Pregerson

---

    *Alberto R. Gonzales is substituted for his predecessor, John Ashcroft,
as Attorney General of the United States, pursuant to Fed. R. App. P.
43(c)(2).

## COUNSEL

Carlos A. Batara, San Diego, California, for the petitioner.

John Hogan, (argued), and Anthony C. Payne (briefed), Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

PREGERSON, Circuit Judge:

Miriam Eliu Yepez-Razo ("Yepez-Razo") petitions for review of a decision of the Board of Immigration Appeals ("BIA") that found her ineligible for a waiver of inadmissibility under section 212(h) of the Immigration and Nationality Act ("INA"), Pub. L. No. 82-414, 66 Stat. 163 (June 27, 1952), 8 U.S.C. § 1182(h). We have jurisdiction under 8 U.S.C. § 1252. We conclude that the BIA erred when it found that Yepez-Razo was not "lawfully residing" in the United States for purposes of section 212(h) from January 15, 1995 to June 13, 1995.

I.

Yepez-Razo, a native and citizen of Mexico, was born on December 15, 1976 and entered the United States on November 4, 1987. Yepez-Razo's father, who obtained lawful permanent resident status in 1988 as a Special Agricultural Worker under 8 U.S.C. § 1160, filed a Petition for Alien Relative on her behalf on November 22, 1991. The Immigration and Naturalization Service ("INS")[1] approved the petition on February 10, 1992. Yepez-Razo filed a Form I-817, Application for Family Unity Voluntary Departure, at some time in 1992; the application is not in the record and the INS was unable to provide it in response to Yepez-Razo's Freedom of Information Act request.

On January 15, 1993, the INS denied Yepez-Razo's Family Unity application, erroneously believing that her father had

---

[1]The INS has been abolished and its functions transferred to the Department of Homeland Security. *See Homeland Security Act of 2002*, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (2002), 6 U.S.C. § 291. We will refer to the government agency as the INS because all facts relevant to this case occurred before the transfer.

obtained lawful permanent resident status under 8 U.S.C. § 1255a, not under 8 U.S.C. § 1160.[2] The INS did, however, grant Yepez-Razo a two-year period of voluntary departure, with employment authorization. Yepez-Razo's voluntary departure period expired on January 15, 1995, and she did not apply for renewal of that period until February 7, 1995.

In 1995 the INS identified Yepez-Razo as an individual who may have been wrongly denied Family Unity benefits. The INS sent her a Settlement Notice pursuant to the *Maca-Alvarez* Settlement; the notice specifically referenced Yepez-Razo's 1992 application for Family Unity benefits. *See generally Parties in Family Unity Class Action Agree to Settle*, 72 Interpreter Releases 283 (Feb. 27, 1995) (discussing *Maca-Alvarez v. INS*, No. CIV-S-93-1824 EJG/PAN (E.D. Cal. Feb. 9, 1995)); *Settlement in Family Unity Case Final, Information Seminars Set*, 72 Interpreter Releases 588 (May 1, 1995); *see also* Stipulated Settlement Agreement, *reproduced in* 72 Interpreter Releases app. at 301-10 (Feb. 27, 1995). The settlement agreement entitled Yepez-Razo to have the INS reconsider its denial of her 1992 Family Unity application. *See* Stipulated Settlement Agreement, *reproduced in* 72 Interpreter Releases app. at 301-10 (Feb. 27, 1995). On June 13, 1995, the INS approved Yepez-Razo's application for Family Unity benefits and another voluntary departure period valid through June 12, 1997. The INS adjusted Yepez-Razo's status to lawful permanent resident in 1996 based on the Petition for Alien Relative that her father had filed in 1991.

---

[2] If the principal applicant applied for lawful status under 8 U.S.C. § 1255a, dependent family member applicants for Family Unity were required to demonstrate that the principal applicant had applied for that status by May 5, 1988. If the principal applicant applied for lawful status under 8 U.S.C. § 1160, dependent family members were required to demonstrate that the principal applicant had applied for that status by December 1, 1988. *See* 8 C.F.R. § 236.12(b). Although Yepez-Razo's father legalized under 8 U.S.C. § 1160, the INS told her that she was denied Family Unity benefits because "the legalized alien did not apply for status prior to May 5, 1988."

On November 30, 1998, Yepez-Razo pled guilty to one count of grand theft in violation of California Penal Code § 487(a). On April 21, 1999, the INS served Yepez-Razo with a Notice to Appear that charged her with removability under 8 U.S.C. § 1227(a)(2)(A)(i), alleging that she committed a crime involving moral turpitude within five years of admission to the United States for which a sentence of one year or longer may be imposed. Yepez-Razo filed an application for adjustment of status and requested a waiver of inadmissibility pursuant to INA section 212(h).

The immigration judge found that Yepez-Razo had not met the lawful residence requirement of the 212(h) waiver and ordered that she be removed to Mexico. The BIA affirmed in a one-paragraph decision, finding that Yepez-Razo lacked lawful immigration status from January 15, 1995 to June 13, 1995, so that she could not have met the statutory requirements of section 212(h).

## II.

Yepez-Razo argues that she was a protected Family Unity beneficiary during the time period in question, and that she satisfies the statutory requirements for a 212(h) waiver.[3] The INS argues that Yepez-Razo was not lawfully present from January 15, 1995 until June 13, 1995 because her first period of voluntary departure had expired and the second period had

---

[3]The 212(h) waiver has traditionally been available if: (1) the alien can demonstrate that her removal would result in extreme hardship to the alien's U.S. citizen or lawfully resident spouse, parent, son or daughter; and (2) the Attorney General determines that the alien merits a favorable exercise of discretion. *See* INA § 212(h)(1)(B), (2). Congress amended the section in 1996 to indicate, *inter alia*, that an alien previously admitted for lawful permanent residence was ineligible for a 212(h) waiver if the alien had not "lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States." INA § 212(h), 8 U.S.C. § 1182(h).

not yet commenced. The INS further contends that Yepez-Razo could not have been a protected Family Unity beneficiary because the INS denied her first application for Family Unity benefits on January 15, 1993. Accordingly, it argues, she was not lawfully continuously residing in the United States during the period in question and cannot statutorily satisfy the requirements of a 212(h) waiver.[4]

We observe at the outset that the precise meaning of "lawfully resided continuously" in section 212(h) is unclear[5] and that the BIA declined to define the phrase below.[6] Whatever the proper definition, we have little doubt that Yepez-Razo was lawfully residing in the United States for purposes of 212(h).

**[1]** The record makes clear that Yepez-Razo was *prima facie* eligible for Family Unity benefits when she applied in 1992. *See* 8 C.F.R. § 236.12-.13. The government acknowledged at argument that "the Family Unity Program is exactly for a petitioner like this." Yet the government contends that we should excuse its clear mishandling of Yepez-Razo's case, and instead penalize Yepez-Razo for a five-month "gap" in

---

[4]Although only the question of statutory eligibility is before us, we observe that the hardship equities appear to tip heavily in Yepez-Razo's favor. She has spent nearly twenty years in the United States, she is married to a U.S. citizen serviceman, has two minor U.S. citizen children, her father is a naturalized U.S. citizen, and her mother is a lawful permanent resident.

[5]Congress indicated that "the provisions governing continuous residence set forth in INA section 240A . . . shall be applied as well for purposes of waivers under INA section 212(h)." H.R. Conf. Rep. No. 104-828, at 228 (1996). That guidance is instructive regarding departures from the United States that would break a term of continuous presence, but does not inform the intended meaning of "lawfully resided."

[6]Though we might endeavor to resolve this matter by defining "lawfully resided continuously" in the first instance, we are mindful of the fact that we are prohibited from "intrud[ing] upon the domain which Congress has exclusively entrusted to an administrative agency." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (internal quotation marks and citation omitted).

her immigration status during her nineteen-year presence in this country. We will not oblige.

**[2]** We find that no such gap existed because Yepez-Razo was a protected Family Unity beneficiary during the time period in question. When Congress created the Family Unity Program as part of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (Nov. 29, 1990), it declared that eligible beneficiaries "may not be deported or otherwise required to depart" the United States and "shall be granted authorization to engage in employment." § 301(a)(1), (2) [set out as a note to 8 U.S.C. § 1255a]. When Congress established the principle of unlawful presence in 1996, it noted that "[n]o period of time in which the alien is a beneficiary of [F]amily [U]nity protection pursuant to section 301 of the Immigration Act of 1990 shall be taken into account in determining the period of unlawful presence in the United States." 8 U.S.C. § 1182(a)(9)(B)(iii)(III).

**[3]** Finally, the INS's own regulations implementing the Family Unity Program clarify that Family Unity protections "shall be considered effective from the date on which the application was properly filed." 8 C.F.R. § 236.15(c); *see also* Memorandum from Johnny N. Williams, INS Exec. Assoc. Comm'r, Office of Field Operations, *Family Unity Benefits and Unlawful Presence*, File No. HQADN 70/10.19 (Jan. 27, 2003), *reprinted in* 8 Bender's Immigration Bulletin 422 app. F at 422-24 (Mar. 1, 2003) (instructing INS field officers that an alien protected by Family Unity benefits is "deemed to be in a period of stay authorized by the Attorney General . . . [that] will be deemed to begin as of the date the Form I-817, Application for Family Unity Benefits, was filed").

**[4]** The courts have interpreted the Family Unity Program to mean that Congress intended to create mandatory protections for qualifying immigrants. *See Hernandez v. Reno*, 91 F.3d 776, 780 (5th Cir. 1996) (stating that "Congress unequivocally has mandated that eligible [Family Unity beneficiaries]

are entitled to: (1) a stay of deportation, (2) authorization to be employed in the United States, and (3) documentary evidence of that authorization"); *Camarena v. Meissner*, 78 F. Supp. 2d 1044, 1049 (N.D. Cal. 1999) (noting that "the grant of [F]amily [U]nity benefits is mandatory, not discretionary").

**[5]** The facts lead inexorably to the conclusion that Yepez-Razo was wrongly denied Family Unity benefits. Yepez-Razo should have been a protected beneficiary from the date that she filed her first Family Unity application in 1992. We thus conclude that Yepez-Razo was lawfully residing in the United States from January 15, 1995 to June 13, 1995. To hold otherwise would subvert Family Unity's broad, protective intent to keep families together. This is one of those cases in which a 212(h) waiver should be made available "to render relief to a citizen or lawful resident alien who is in extreme need thereof." *Matter of B—*, 11 I. & N. Dec. 560, 563 (BIA 1966).

Accordingly, we **GRANT** the petition for review.