# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA ALEJANDRA VASQUEZ DE
ALCANTAR,
                          *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                          *Respondent.*

No. 08-71427

Agency No.
A075-599-388

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 2, 2010—Pasadena, California

Filed June 3, 2011

Before: Mary M. Schroeder, Raymond C. Fisher and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith;
Concurrence by Judge Fisher

7405

## COUNSEL

Christopher J. Stender, San Francisco, California, for petitioner Maria Alejandra Vasquez de Alcantar.

Jessica Segall, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for respondent Attorney General Holder.

## OPINION

N.R. SMITH, Circuit Judge:

An approved Form I-130 Petition for Alien Relative does not confer admission status on an undocumented alien for purposes of showing seven years of continuous residence under 8 U.S.C. § 1229b(a)(2). An approved Form I-130 petition merely provides an undocumented alien (one who entered without inspection or authorization and has not otherwise been admitted) permission to apply for adjustment of status.

## I.   Factual Background

Maria Alejandra Vasquez de Alcantar ("Vasquez") entered the United States without inspection in 1989. Vasquez later married a legal permanent resident ("LPR"), who thereafter became a United States citizen. After their marriage, Vasquez wanted to receive LPR status in the United States. Therefore, Vasquez's husband filed a Form I-130, Petition for Alien Relative, to establish his marital relationship to Vasquez as a first step in assisting Vasquez to adjust her status to that of an LPR. On August 6, 1998, Vasquez's husband's I-130 visa petition was granted. The approval of the I-130 allowed Vasquez to apply for adjustment of status (Form I-485, Application to Register Permanent Residence or Adjust Status), which she did on June 5, 2000. As is customary with most aliens who are awaiting LPR status, the United States Citizenship and Immigration Services ("USCIS") issued Vasquez employment authorization, which enabled Vasquez to seek employment in the United States.[1] On May 17, 2001, she was granted LPR status.

---

[1]Aliens awaiting LPR status are also allowed to apply for advanced parole (Form I-131) in order to travel outside of the United States. Vasquez applied for advanced parole during this time period, but it is unclear from the record whether it was granted.

However, on July 12, 2006, Vasquez attempted, by using her daughter's travel documents, to assist an undocumented, unrelated minor to unlawfully enter the United States. On the next day, Vasquez was served with a Notice to Appear in removal proceedings for knowingly assisting an undocumented person to enter the United States in violation of § 212(a)(6)(E)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(E)(i).

After Vasquez's removal proceedings, the Immigration Judge ("IJ") found her removable based upon the charges. Vasquez then applied for cancellation of removal, asserting eligibility because she (1) had been an LPR for more than five years; (2) had resided in the United States for more than seven years after being "admitted in any status;" and (3) had not been convicted of an aggravated felony. The IJ found that Vasquez met all the elements required for cancellation of removal under 8 U.S.C. § 1229b(a). Relevant to this appeal, the IJ specifically found that Vasquez met the seven years of continuous residence requirement by finding Vasquez was "admitted in any status" on the day she became the beneficiary of an approved I-130 petition (August 6, 1998). In reaching that decision, the IJ found a beneficiary of an approved I-130 visa petition was "admitted in any status," by comparing I-130 beneficiaries to beneficiaries of the Family Unity Program, which we held are "admitted in any status" in *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1009 (9th Cir. 2006).

On appeal, the Board of Immigration Appeals ("BIA") disagreed with the IJ. The BIA instead determined that an alien with an approved visa petition (Form I-130) and a pending adjustment of status application (Form I-485) only has a "pending application for admission" and is therefore not "admitted in any status." The BIA found that Vasquez was not "admitted in any status" until May 17, 2001 (the date she was granted LPR status). Vasquez, therefore, did not meet the seven years of continuous residence requirement for cancella-

tion of removal. The BIA limited *Garcia-Quintero*'s applicability to those aliens admitted into the Family Unity Program.

## II. Standard of Review

We review de novo "the BIA's determination of purely legal questions, including the BIA's interpretation of the Immigration and Nationality Act." *Lopez v. INS*, 184 F.3d 1097, 1099 (9th Cir. 1999). We apply *Chevron* deference to the Attorney General's interpretations of ambiguous immigration statutes, if the agency's decision is a published decision. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009). However, we need not defer to the BIA if the statute is unambiguous. *See id.* at 908; *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999). We follow "the *Skidmore* framework if the decision is unpublished (and not directly controlled by any published decision interpreting the same statute)." *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010) (citing *Marmolejo-Campos*, 558 F.3d at 909-11).

## III. Discussion

[1] In order to be eligible for cancellation of removal, a legal permanent resident alien (who is inadmissible or deportable) must meet the requirements set forth in 8 U.S.C. § 1229b(a):

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—
>
> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
>
> (3) has not been convicted of any aggravated felony.

In this case, we must only decide at what point Vasquez was "admitted in any status" under 8 U.S.C. § 1229b(a)(2). The other requirements of the statute are not disputed. Specifically, we must decide whether having received an approved Form I-130 petition from the USCIS constitutes admission "in any status." In making this determination, we first consider whether Vasquez was "admitted in any status" by lawful entry after inspection, under the definition of "admitted" set forth in 8 U.S.C. § 1101(a)(13)(A). We conclude that she was not. We then apply our case law, which explains alternative methods for satisfying the statutory requirement of § 1229b.

## A.   *"Admitted" as defined by 8 U.S.C. § 1101(a)(13)(A) is not applicable*

The Supreme Court established that, when we review the Attorney General's interpretation of a provision of the INA, we apply the two-step inquiry set forth by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1021 (9th Cir. 2005). We ask (1) "whether Congress has directly spoken to the precise question at issue," *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 489 (9th Cir. 2007) (quoting *Chevron*, 467 U.S. at 842), and, if not, (2) "whether the agency's answer is based on a permissible construction of the statute," *id.* at 492 (quoting *Chevron*, 467 U.S. at 843). "If congressional intent is clear, both the court and the agency must 'give effect to the unambiguously expressed intent of Congress.' " *Garcia-Quintero*, 455 F.3d at 1012 (quoting *Chevron*, 467 U.S. at 843). However, we must defer to the BIA in interpreting a provision of the INA if the statute is silent or ambiguous with respect to the specific issue before the agency, and the BIA's interpretation is " 'based on a permissible construction of the statute.' " *Aguirre-Aguirre*, 526 U.S. at 424 (quoting *Chevron*, 467 U.S. at 843).

At issue here is whether Vasquez "resided in the United States continuously for seven years after having been admit-

ted in any status." 8 U.S.C. § 1229b(a)(2). There is no dispute that Vasquez entered the United States illegally (without inspection and authorization) in 1989. There is also no dispute that Vasquez has been in the United States continuously for more than seven years. Lastly, there is no dispute that her period of continuous residence ended on July 12, 2006, when she attempted to smuggle an alien into the United States. 8 U.S.C. § 1229b(d)(1). In order to answer the question, we must first examine the language of the statute.

**[2]** While the whole phrase "admitted in any status" is not defined by Congress, the term "admitted" is. *See* 8 U.S.C. § 1101(a)(13)(A). The statute provides that " 'Admission' and 'admitted' mean . . . the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). This definition is clear and unambiguous. *Shivaraman v. Ashcroft*, 360 F.3d 1142, 1146 (9th Cir. 2004). Thus, we need not defer to the BIA with regard to the meaning of this term.

**[3]** *Shivaraman* also makes it clear that the date of admission is usually the date of lawful entry into the United States. 360 F.3d at 1146. In addressing the applicable date of admission for an alien who entered the United States legally *and* adjusted his status to that of a lawful permanent resident, we held that "the statute makes clear that it is *the* date on which the alien lawfully enters that triggers the [applicable time period]."[2] 360 F.3d at 1143, 1146 (emphasis in original). Thus, the date of admission was the date that Shivaraman legally entered the United States. *Id.*[3] In so holding, we rejected the BIA's contention that Shivaraman's "date of admission" was the date of his adjustment rather than the date of his lawful

---

[2]The language at issue in *Shivaraman* was "after the date of admission." *See* INA § 237(a)(2)(A)(I), 8 U.S.C. § 1227.

[3]This court recently held in *Hing Sum v. Holder* that "admitted" as used in § 1101(a)(13)(A) refers to inspection and authorization after a "procedurally lawful entry." 602 F.3d 1092, 1098-99 (9th Cir. 2010).

entry into the United States. We distinguished *Ocampo-Duran v. Ashcroft*, 254 F.3d 1133 (9th Cir. 2001) and *In re Rosas-Ramirez*, 22 I. & N. Dec. 616 (BIA 1999), because, in those cases, the petitioners "initially entered the U.S. *without* inspection and authorization, and remained [in the U.S.] unlawfully until their subsequent adjustment of status. Under INA § 237(a)(2)(A)(iii), that adjustment [of status date] constituted [Ocampo-Duran's and Rosas-Ramirez's] first and *only* 'admission' to this country . . . ." *Shivaraman*, 360 F.3d at 1147 (emphases in the original).

**[4]** Thus, in applying the plain language of the statutory definition of "admitted" to the present case, Vasquez was never "admitted" as defined in § 1101(a)(13)(A), because she did not enter the United States after inspection and authorization.

### B.  *An approved I-130 visa petition does not qualify a beneficiary as "admitted in any status" under the alternative methods of establishing § 1229b(a)(2) admission*

Even though Vasquez was not "admitted" under the statutory definition set forth in 8 U.S.C. § 1101(a)(13)(A), the clause "in any status" has been interpreted to create alternative methods for aliens, who do not enter after inspection and authorization, to meet the "admitted in any status" requirement of § 1229b(a)(2). *See Cuevas-Gaspar*, 430 F.3d at 1029 (holding that the terms "admit" or "admission" were not limited to the definition found in 8 U.S.C. § 1101(a)(13) and thus a parent's LPR status is imputed to unemancipated minor children for purposes of "admission."); *In re Rosas-Ramirez*, 22 I. & N. Dec. at 619 (holding "admitted" for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii) includes those who are "lawfully admitted for permanent residence"). We examine and apply those alternative methods now.

### 1. *Vasquez was not admitted as a nonimmigrant*

The phrase "admitted in any status" is not defined by statute. Therefore, we look first to the BIA for its interpretation. While the BIA did not address this phrase in the present case,[4] it addressed its meaning in *In re Blancas-Lara*, 23 I. & N. Dec. 458 (B.I.A. 2002). In *Blancas-Lara*, the BIA considered whether a nonimmigrant who entered the United States with a border crossing card was "admitted in any status." *Id.* at 459. The BIA found that the term "in any status" modifies the term "admitted," in that it applies equally to immigrants and nonimmigrants alike. The BIA noted as follows:

> Although no specific definition of the word "status" is included in section 101 of the Act, it is generally defined in the legal context as a "[s]tanding; state or condition," and as "[t]he legal relation of [an] individual to [the] rest of the community." Black's Law Dictionary 1264 (5th ed. 1979). "Status" is a term of art, which is used in the immigration laws in a manner consistent with the common legal definition. It denotes someone who possesses a certain legal standing, e.g., classification as an immigrant or nonimmigrant. The use of the word "any" to modify the word "status" indicates that Congress intended section 240A(a)(2) to include admissions of nonimmigrants as well as immigrants. Thus, the plain language of section 240A(a)(2) encompasses nonimmigrants admitted to the United States who thereafter reside in the United States for at least 7 years.

---

[4]We afford little deference under *Skidmore* to the BIA's analysis in the present case, because it did not provide thorough reasoning and is conclusory. *See Garcia-Quintero*, 455 F.3d at 1014 ("[T]he weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

*Id.* at 460. We have previously relied upon this definition. *See Garcia-Quintero*, 455 F.3d at 1017.

Thus, under this analysis, aliens, immigrants and nonimmigrants alike, are eligible to accrue time towards the continuous residence requirement after they are lawfully admitted even if they are illegally present for some period of time thereafter. *See Blancas-Lara*, 23 I. & N. Dec. at 461 (noting that "Congress could easily have written section 240A(a)(2) to include maintenance of status as a prerequisite for relief"). This BIA definition does not support Vasquez's argument that an approved I-130 visa petition provides status, because Vasquez is not categorically an immigrant or a nonimmigrant. *See* 8 U.S.C. § 1101(a)(15). Both immigrants and nonimmigrants alike have been previously "admitted." Here, Vasquez was never "admitted" either by (1) inspection at the border or (2) an alternative method (discussed herein), thus she was categorically an undocumented or illegal alien.

**[5]** While 8 U.S.C. § 1255(i)(1) allows certain undocumented aliens to apply for adjustment of status if they are beneficiaries of an I-130 visa petition, the approval of the I-130 petition does not constitute admission "in any status." *See* 8 U.S.C. § 1255. As we noted in *Agyeman v. INS,* the approval of the I-130 visa petition only "establishes eligibility for status, the Attorney General — or in the context of deportation proceedings, the IJ — must still decide to accord the status." 296 F.3d 871, 879 (9th Cir. 2002); *see also Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305 (9th Cir. 1984) (noting that an approved visa petition "does not guarantee that a visa will be issued, nor does it grant the alien any right to remain in the United States. . . . The INS may revoke an approved visa petition 'at any time' when it finds 'good and sufficient cause.' " (citations omitted)). Although *Blancas-Lara* did not address the term "in any status" in the context of undocumented aliens who later receive an I-130 visa petition, we find no reason to expand its proffered definition of "in any status" to apply here.

## 2. *Filing for LPR status does not confer admission*

**[6]** There is no dispute that Vasquez was admitted when she received her LPR status in May 2001. While Vasquez took the appropriate steps to receive LPR status (applying for and receiving an I-130 visa petition), we have never held that mere filing for LPR status constitutes admission. In *United States v. Latu*, we held that the filing of an application for adjustment of status did not legalize the alien's presence in the context of 18 U.S.C. § 922(g)(5)(A) (being an illegal alien in possession of a firearm). *See* 479 F.3d 1153, 1159 (9th Cir. 2007). Although in *Latu,* we were required to determine whether Latu met the definition of "illegally or unlawfully" based upon his failure to depart the United States, we addressed the effect that his application for adjustment of status (based upon his marriage to a United States citizen) had upon his "illegal status." *Id*. at 1157-58. In doing so, we cited with favor *United States v. Elrawy*, which held "[A]n alien who has acquired unlawful or illegal status (either by overstaying a visa or illegally crossing the border without admission or parole) cannot relinquish that illegal status until his application for adjustment of status is *approved*." 448 F.3d 309, 314 (5th Cir. 2006) (emphasis added). We continue to agree with the Fifth Circuit's holding in *Elrawy* that "the submission of an application does not connote that the alien's immigration status has changed, as the very real possibility exists that the INS will deny the alien's application altogether." *Id*. at 313 (quoting *United States v. Lucio*, 428 F.3d 519, 525 (5th Cir. 2005)).

**[7]** Because we hold that the filing of an application for adjustment of status does not confer any change in status, we also hold that an approved I-130 application does not confer any change in status. As noted by the Fifth Circuit in *Elrawy*, an approved I-130 petition does not change the beneficiary's unlawful status, "because the approval of the petition is only one step in the application for adjustment of status." *Id*. at 314; *see also Ngongo v. Ashcroft*, 397 F.3d 821, 823 (9th Cir.

2005) (holding that the approval of an I-130 does not entitle the alien to adjustment of status because the IJ would still have to determine whether to confer LPR status); *United States v. Bazargan*, 992 F.2d 844, 848 (8th Cir. 1993) (holding that a grant of an employment authorization did not alter an asylum applicant's legal status for purposes of § 922(g)(5)).

**[8]** Therefore, because Vasquez entered without inspection or authorization, her first and only admission (giving her status) is the date that her adjustment of status was approved (here May 17, 2001). The filing and subsequent approval of a Form I-130 visa petition cannot be the equivalent of inspection and authorization to enter and remain in the United States. An approved I-130 visa petition only allows the alien petitioner to obtain work authorization[5] and apply for adjustment of status (Form I-485). Any finding that the approval of a Form I-130 visa petition (the first step in adjusting one's status) meets the statutory definition of "admitted in any status" would be inconsistent with our precedent. Thus, because the statutory language and case law is clear, we hold that Vasquez was not admitted in any status until her status was adjusted.

**[9]** Because seven years had not passed between the time that Vasquez's adjustment of status application was approved (May 2001) and the time of her offense (July 2006), she is not eligible for cancellation of removal under 8 U.S.C. § 1229b(a)(2).

---

[5]Because Vasquez does not argue that the issuance date of her employment authorization gave her status, we decline to address that issue here. We note, however, that even if she had made that argument, she would not have met the seven years of continual residence.

### 3. *An approved I-130 visa petition is not the equivalent of acceptance into the Family Unity Program*

Applying *Cuevas-Gaspar*, we further extended the definition of "admitted in any status" to include participants in the Family Unity Program ("FUP") in *Garcia-Quintero v. Gonzales*, 455 F.3d 1006 (9th Cir. 2006).[6] Vasquez was not admitted as an FUP beneficiary. Instead, Vasquez argues that an approved I-130 visa petition is the equivalent of acceptance into the FUP, and therefore the same "family unity" justification for "admitting" FUP beneficiaries should apply to I-130 beneficiaries. We disagree.

Garcia-Quintero was an undocumented alien who married an LPR and was accepted into the FUP. *Garcia-Quintero*, 455 F.3d at 1009. The BIA held that the FUP beneficiary status did not render one "admitted in any status" for purposes of cancellation of removal. *Id.* at 1011. On appeal, we rejected the BIA's unpublished determination that FUP acceptance does not render one "admitted in any status." *Id.* We first noted that the term "admission" was not limited to "physical entry and inspection" as set forth in 8 U.S.C. § 1101(a)(13). *See id.* at 1016 (citing *Cuevas-Gaspar*, 430 F.3d at 1028). We next determined that "in any status" applied to FUP beneficiaries as long as they remained in the program while applying for adjustment of status, because the purpose of the program was for aliens to remain and work in the United States for two-year renewable intervals until their application was approved. *Id.* at 1017. Because FUP beneficiaries were allowed to remain in the United States for two-year renewable intervals while they worked and awaited adjustment of status, we concluded that this met the meaning of "in any status." *See id.* at 1018. We further noted that the terms "admitted" and "status" appeared together in the FUP regulations indicating

---

[6]The BIA in *Matter of Reza-Murillo*, 25 I. & N. Dec. 296 (B.I.A. 2010), rejected our holding in *Garcia-Quintero* in a published opinion out of the Fifth Circuit.

that Congress intended "FUP beneficiaries [to] have an 'immigration status,' albeit a limited one." *Id.* Thus, we held that FUP beneficiaries were "admitted in any status" for purposes of cancellation of removal. *Id.* at 1019.

**[10]** However, *Garcia-Quintero* is not applicable here, because FUP beneficiaries are distinct from I-130 visa petition beneficiaries. The FUP was created to allow eligible spouses or unmarried children of legalized aliens to apply for the benefits of the program, including protection from deportation and authorization to work in the United States. *Garcia-Quintero*, 455 F.3d at 1009 (citing Pub. L. No. 101-649, § 301(a) (2006)). The FUP is "designed to help families stay together while the beneficiaries adjust to LPR status." *Id.* Though beneficiaries under the FUP and beneficiaries of I-130 visa petitions are provided similar benefits, such as the ability to remain in the United States and seek employment while awaiting adjustment to LPR status, participants in the FUP are provided congressionally mandated benefits, and must meet additional requirements for eligibility. Thus, the mere approval of an I-130 visa petition (without more) is not the equivalent of participation in the FUP.

Regarding the congressionally mandated benefits, in enacting the FUP, Congress specifically set forth protections and entitlements not provided to other aliens. *See* Pub. L. No. 101-649, § 301. FUP recipients " 'may not be deported or otherwise required to depart' the United States and 'shall be granted authorization to engage in employment.' " *Yepez-Razo v. Gonzales*, 445 F.3d 1216, 1219 (9th Cir. 2006) (quoting § 301(a)(1), (2) [set out as a note to 8 U.S.C. § 1255a]). No such "mandatory protections" exist for a recipient of an I-130 visa petition. To be sure, "nothing in the Immigration and Nationality Act immunizes a deportable alien from deportation when a visa petition filed on his behalf is approved." *Perales v. Casillas*, 903 F.2d 1043 (5th Cir. 1990) (citing *Rubio de Canchu v. INS*, 568 F.2d 625, 628 (9th Cir. 1977) ("[P]ending applications for immigration status do not entitle

an alien to a suspension or termination of deportation.”)); *see also* 8 U.S.C. § 1255(i).

As noted, FUP applicants must meet heightened eligibility requirements, which also sets them apart from I-130 applicants. First, qualified aliens must meet additional eligibility requirements under the FUP in addition to complying with the Form I-130 petition requirements. They must have entered the United States before May 5, 1988 or December 1, 1988 and have continually resided in the United States since that date. *See* 8 C.F.R. §§ 236.12, 236.15.

Second, the FUP excludes all applicants from eligibility if they are:

> (a) An alien who is deportable under any paragraph in section 237(a) of the Act [8 U.S.C. § 1227], except paragraphs (1)(A), (1)(B), (1)(C), and (3)(A); provided that an alien who is deportable under section 237(a)(1)(A) of such Act is also ineligible for benefits under the Family Unity Program if deportability is based upon a ground of inadmissibility described in section 212(a)(2) or (3) of the Act [8 U.S.C. § 1182];
>
> (b) An alien who has been convicted of a felony or three or more misdemeanors in the United States;
>
> (c) An alien described in section 241(b)(3)(B) of the Act; or
>
> (d) An alien who has committed an act of juvenile delinquency (as defined in 18 U.S.C. 5031) which if committed by an adult would be classified as:
>
>> (1) A felony crime of violence that has an element the use or attempted use of physical force against another individual; or

(2) A felony offense that by its nature involves a substantial risk that physical force against another individual may be used in the course of committing the offense.

8 C.F.R. § 236.13. Nothing in the regulations or statutes provides the same exclusions for beneficiaries of an I-130 visa petition. For example, based upon the plain language in the FUP, aliens are ineligible if they have been convicted of *any* felony. This is in contrast to the statutory framework that defines which classes of aliens are ineligible for Form I-130 visa petitions or admission. There, Congress has not excluded aliens based upon a conviction of *any* felony, but rather sets forth the specific crimes (and exceptions thereto) which would make an alien ineligible for an I-130 visa petition. *See* 8 U.S.C. § 1182(a)(2). Thus, the qualifications are more stringent for FUP beneficiaries.

Third, unlike I-130 visa recipients, FUP beneficiaries are provided "immigration status" in the regulations. FUP beneficiaries are allowed to travel outside the United States by applying for advanced authorization (Form I-131). While beneficiaries of an approved I-130 visa petition may also request permission to travel outside of the United States, the contrast in the language addressing advanced parole for the two categories is telling. A FUP beneficiary who travels outside the United States on advanced authorization and returns "shall be inspected and *admitted in the same immigration status* as the alien had at the time of departure . . . ." 8 C.F.R. § 236.16 (emphasis added). On the other hand, admission status connected to advanced parole for other adjustment of status applicants is specifically precluded by 8 U.S.C. § 1182(d)(5)(A), which states that the granting of advanced parole "shall not be regarded as an admission of the alien." *See also* 8 U.S.C. § 1101(a)(13)(B) ("An alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted."). It is clear by the statutory language that Congress

intended to provide some "status" to FUP recipients. Congress did not use the same language in respect to those persons applying for visas, thus we assume Congress did so on purpose. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002).

Lastly, the extra protection or "immigration status" provided to FUP beneficiaries was clarified by Congress when it "established the principle of unlawful presence in 1996, [and] noted that 'no period of time in which the alien is a beneficiary of Family Unity protection pursuant to section 301 of the Immigration Act of 1990 shall be taken into account in determining the period of unlawful presence in the United States.' " *Yepez-Razo*, 445 F.3d at 1219 (quoting 8 U.S.C. § 1182(a)(9)(B)(iii)(III) (1997)) (alterations omitted). No similar language exists with regard to beneficiaries of the I-130 visa.

**[11]** The foregoing makes it clear that FUP participants are distinct from those aliens who have merely become I-130 beneficiaries. Congress, in enacting the FUP, provided mandatory protections and benefits to a distinct group of aliens while they await adjustment of status. It has not enacted similar protections to beneficiaries of I-130 visa petitions. Thus, we hold that the FUP extends admission status to a narrow group of applicants as set forth by Congress. Because the case law, statutes, and regulations do not support a holding that beneficiaries of approved I-130 visa petitions should be given admission status, we must decline to do so.

**PETITION FOR REVIEW DENIED.**

FISHER, Circuit Judge, concurring specially:

I agree with my colleagues in the majority that neither the approval of Vasquez's husband's I-130 petition nor the filing of Vasquez's application for adjustment of status constituted admission "in any status" under 8 U.S.C. § 1229b(a)(2). I therefore concur, but with the understanding that the discussion, in Part III.B.3, of the difference between Vasquez's circumstances and those of a Family Unity Program (FUP) beneficiary merely distinguishes approval of the I-130 petition from acceptance into the FUP, without reaching whether any other grant of benefits might constitute admission. *See* Maj. Op. at 7418 n.5.