# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2015

Lyle W. Cayce
Clerk

No. 14-60183

RAMIRO CONSTANTINO TULA RUBIO, also known as Ramiro Tula,

Petitioner

v.

LORETTA LYNCH, U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A 077 669 229

Before STEWART, Chief Judge, HAYNES, Circuit Judge, and BROWN, District Judge.[*]

O R D E R :

A member of the court in active service having requested a poll on the reconsideration of this cause en banc, and a majority of the judges in active service and not disqualified not having voted in favor (Fed. R. App. P. 35 and 5th Cir. R. 35), rehearing en banc is DENIED.

In the en banc poll, 5 judges voted in favor of rehearing (Judges Jones, Smith, Clement, Owen, and Elrod), and 10 judges voted against rehearing

---

[*] District Judge for the Eastern District of Louisiana, sitting by designation.

(Chief Judge Stewart and Judges Jolly, Davis, Dennis, Prado, Southwick, Haynes, Graves, Higginson, and Costa).

ENTERED FOR THE COURT:

/s/ Catharina Haynes

_____

CATHARINA HAYNES
United States Circuit Judge

JONES, Circuit Judge, joined by SMITH, CLEMENT and OWEN, Circuit Judges, dissenting from Denial of Rehearing En Banc

I respectfully dissent from the denial of rehearing en banc. The panel here interpreted the Immigration and Naturalization Act's important provision for cancellation of removal, 8 U.S.C. § 1229b(a), in a way that is contrary to the Supreme Court, contrary to the BIA's interpretations, contrary to case law, and contrary to major immigration treatises. The panel's interpretation deprives the statutory phrase "in any status" of meaning. Moreover, by allowing this provision to cover aliens who were mistakenly admitted without legal status, the panel renders § 1229b(a) far broader than Congress intended. For whatever reason, the government has not sought en banc rehearing. However, the panel's statutory misinterpretation is sufficiently significant that we should have corrected it.

## BACKGROUND

Petitioner Tula-Rubio was waved through the Laredo border checkpoint in 1992 as a four-year-old asleep in the back of a car. He became an undocumented alien who could have been deported at any time from his initial entry until he was granted lawful permanent resident status ("LPR") under the immigration law ten years later. After being convicted of deportable crimes and charged with inadmissibility,[1] which he conceded, he sought cancellation of removal before an immigration judge. He had the burden to prove, *inter alia*, that he had resided continuously in the United States for seven years

---

[1] The panel opinion refers to Tula-Rubio as being "charged with removability." That is incorrect. He was charged with inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(I)-(II) because the law treats undocumented aliens in the country as if they are being scrutinized at the border.

after having been "admitted in any status." 8 U.S.C. § 1229b(a)(2).[2] *Ramos-Torres v. Holder*, 637 F.3d 544, 548 (5th Cir. 2011). Both the immigration judge ("IJ") and the Board of Immigration Appeals ("BIA") determined that while a mistaken wave through qualified as being "admitted" into the United States, he was admitted without "status" and therefore failed to meet this requirement of Section 1229b(a)(2).[3]

The panel decision, reversing the BIA, holds that "any status" means simply "admitted," and that an erroneously permitted entry of an illegal alien confers sufficient "status" to make the alien later eligible for cancellation of removal.

The panel agrees with the BIA that the Immigration and Nationality Act ("INA") defines "admitted" as a lawful entrance, 8 U.S.C. § 1101(a)(13)(A), and that BIA precedent defines "lawful" for admission purposes as procedurally lawful rather than substantively lawful. *Matter of Quilantan*, 25 I. & N. Dec. 285, 290 (BIA 2010). Therefore, even if an alien has no legal basis to enter the country, the alien is lawfully "admitted" so long as he presents himself for inspection. *Id.*

---

[2] 8 U.S.C. § 1229b(a) authorizes the Attorney General to cancel removal of an alien who is inadmissible or deportable from the United States if the alien:
  (1) has been an alien lawfully admitted for permanent residence for not less than 5 years.
  (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
  (3) has not been convicted of any aggravated felony.

*Ibid.* The parties agree that Tula-Rubio meets the first and third requirements.

[3] The immigration judge explained that "'[s]tatus' is a term of art which is commonly used in Immigration Courts and Immigration proceedings throughout the United States. As the BIA noted in *Matter of Blancas-Lara.*, 23 I&N Dec. 458 (BIA 2002), the term status denotes someone who possesses a certain legal standing, such as an immigrant or nonimmigrant. This Court does not believe that the word status includes those who have *no status* or legal right to enter or remain in the United States. This Court further believes that a person who is present in the United States without permission cannot be considered a nonimmigrant." ROA.052 (emphasis added).

Construing the phrase "in any status" de novo,[4] however, the panel overrules the BIA and holds that "status" includes all aliens, whether immigrants, nonimmigrants, or undocumented aliens. The panel opinion consults the dictionary for the broad definitions of the word "any" (meaning "all of the type to which it refers") and "status" (meaning "all states or conditions, of whatever kind, that an alien may possess under the immigration laws"). The panel then cites the BIA decision *In re Blancas-Lara*, 23 I. & N. Dec. 458 (BIA 2002) as being "along the same lines" because the BIA defined "any status" as covering those who are "immigrants" and "nonimmigrants" under the law.

The panel adduces two structural arguments allegedly favoring its interpretation. First, the panel contrasts the 1229b(a)(1) requirement that the alien be "lawfully admitted for permanent residence," with the subsequent continuous residence requirement that omits the word "lawfully." The panel also asserts that the terms "status" and "unlawful status," as used elsewhere in the INA, fortify their dictionary approach. From these statutory points, the panel reasons that Section 1229b(a) requires the alien spend at least 5 years legally in the U.S. and at least 7 years after being "admitted" in legal or illegal "status."

## CRITIQUE

Contrary to the panel's analysis, this open-ended definition of "any status" is wrong for four significant reasons: (1) it renders "in any status" superfluous to § 1229b(a); (2) "status" is a term of art in immigration law, not a generic term as the panel held; (3) because "status" is a term of art, the

---

[4] There is some question about how much deference applies to the BIA interpretation. Like the panel, I do not find the statute ambiguous and need not argue the need for deference. *Cf. Holder v. Martinez Gutierrez*, 132 S. Ct. 2011 (2015) (construing § 1229b(a) both with and without *Chevron* deference).

panel's structural interpretation of Section 1229b(a) is incorrect; and (4) the BIA's opinion in *Blancas-Lara* actually contradicts the panel's opinion.

1. The clearest refutation of the panel's statutory interpretation is that it renders "in any status" meaningless within Section 1229b(a)(2), a result judges are not empowered to achieve. We must construe statutes to lend meaning to every word, absent an absurdity. If the 7-year residence requirement runs from an alien's being "admitted in any status," and "in any status" includes immigrants, non-immigrants, and illegal aliens, then what does "status" exclude? What significance does it have in the provision? The panel interpretation neuters the phrase.

2. "Status" is a term of art in immigration law, and "any status" refers exclusively to the legal categories enumerated in the INA and conferred upon aliens. *See, e.g., Texas v. U.S.*, 787 F.3d 733, 759 & n.76 (5th Cir. 2015) ("The INA expressly identifies legal designations allowing defined classes of aliens to reside lawfully in the United States . . . ."); *Blancas-Lara*, 23 I. & N. Dec. at 460; *Matter of Rotimi*, 24 I. & N. Dec. 567, 576 (BIA 2008) ("Ordinarily, we would expect the privilege of residing in this country to be reflected in a recognized status such as that of nonimmigrant, refugee, or asylee, each of which is set out in the statute.").[5] An illegal alien does not possess a "status;" there is no statutorily enumerated class for illegal aliens. An illegal alien is instead "without status" and is subject to the grounds of inadmissibility and

---

[5] Nonimmigrant status belongs to an alien who has lawfully entered the country on one of the visa categories laid out under 8 U.S.C. §§ 1101(a)(15)(A)-(V), which provide only for temporary stays in the country. All other aliens are presumed to intend to live permanently in the United States. But in order to be admitted in immigrant status, an alien must possess an immigrant alien visa as defined at 8 U.S.C. § 1101(a)(16). An alien can also obtain immigrant status, also known as LPR, through the adjustment of status provisions under 8 U.S.C. §§ 1255-1255b. Thus an undocumented alien unlawfully present cannot possess immigrant status. *See also* STEEL ON IMMIGRATION LAW § 2:23 (2014 ed.) ("The terms or concepts immigrant, permanent resident, permanent resident alien, "green card" holder, or "blue card" holder, are synonymous.").

removability under 8 U.S.C. §§ 1182 & 1227. Indeed, a leading immigration treatise explains that cancellation of removal is not available to aliens who "hav[e] entered without status." STEEL ON IMMIGRATION LAW § 14:28 (2014 ed.)

The Supreme Court has recognized "status" as a term of art by describing Section 1229b(a) as follows: for purposes of cancellation, "the alien must have lived in the United States for at least seven continuous years after a lawful admission, whether as an LPR *or in some other immigration status*." *Holder v. Martinez Gutierrez*, 132 S. Ct. 2011, 2015 (2012) (emphasis added).

Many decisions have explained that not all legal benefits are sufficient to constitute a "status" for cancellation of removal under Section 1229b(a). Status is thus not a generic descriptor for any relationship between any alien and the United States, but requires a specific level of protections and benefits apart from the fact of a mistaken entry. *See e.g.*, *Matter of Rotimi*, 24 I. & N. Dec. at 576 ("Ordinarily, we would expect the privilege of residing in this country to be reflected in a *recognized status* such as that of nonimmigrant, refugee, or asylee, *each of which is set out in the statute*.") (emphasis added); *Offiiong v. Holder*, 406 F. App'x 112, 113 (9th Cir. 2010) ("[M]istaken admission confer[s] no status, permanent resident or otherwise."); *Matter of Reza-Murillo*, 25 I. & N. Dec. 296, 297 (BIA 2010) ("The grant of [Family, Unity Program] FUP benefits may very well have accorded the respondent 'any status.'"); *Vasquez de Alcantar v. Holder*, 645 F.3d 1097, 1101-02 (9th Cir. 2011) (holding that an approved visa petition was neither an admission nor a provision of status); *Guevara v. Holder*, 649 F.3d 1086, 1095 (9th Cir. 2011) (holding, over dissent, that an employment authorization did not provide status for cancellation of removal); *Garcia v. Holder*, 659 F.3d 1261, 1269 (9th Cir. 2011) (recognizing that the Family Unity Program gave sufficient benefits and protections to confer upon the "beneficiaries a status" and holding that

beneficiaries of a similar program were also conferred status); *Matter of Fajardo Espinoza*, 26 I. & N. Dec. 603, 605 (BIA 2015) ("[Prior case] was more on the question whether a grant of FUP benefits conferred a 'status' than on whether it constitutes an 'admission.' We do not dispute that an alien who was granted FUP benefits has a 'status' for immigration purposes.").

The Ninth Circuit's analysis in *Garcia v. Holder*, 659 F.3d at 1271, illustrates the considerations a court undertakes when deciding whether legal protections conferred upon an alien amount to a "status" under the cancellation of removal provision. In that case, an alien argued that his application for Special Immigrant Juvenile Status conferred a variety of benefits that amounted to status. *Id.* at 1265. The court noted that "SIJS-based parolees" were given "permission to remain in the country pending the outcome of their adjustment of status application, employment authorization, exemption from certain inadmissibility grounds applicable to other aliens . . . ." *Id.* at 1271. Based on these benefits, the court held a grant of SIJS-based parole counts as both admission and a provision of status for the alien for purposes of 1229b(a). *Id.* at 1272.

If "status" meant, for purposes of cancellation of removal, only that an inadmissible alien had been inadvertently waved through, then many of the above cases discussing the sufficiency of "status" would have wasted the courts' time. To put the matter differently, if Tula-Rubio, who entered and resided here as an illegal alien for ten years, is eligible for cancellation of removal despite his erroneous admission, then these other aliens who had achieved some legal benefits in the U.S., albeit ultimately without sufficient "status," are being more harshly treated under Section 1229b(a). Such disparity makes no sense.

Decisions of this and other courts recognize that if the undocumented alien lacks a status defined by the INA, the alien is "without status" and is

either inadmissible or removable. *See United States v. Orellana*, 405 F.3d 360, 370 (5th Cir. 2005) ("Rather, we find that these cases deal exclusively with scenarios in which an alien . . . lacks any status whatsoever."); *see also Pereira-Barbeira v. U.S. Dep't of Justice, Immigration & Naturalization Serv.*, 523 F.2d 503, 506 (2d Cir. 1975) ("[I]t is established by clear, unequivocal and convincing evidence that the respondent is without status in the United States . . . ."); *Saloum v. U.S. Citizenship & Immigration Servs.*, 437 F.3d 238, 240-41 (2d Cir. 2006) ("[A] Syrian national [Wasila Zarkaly] who held no status in the United States"); *Reyes-Melendez v. I.N.S.*, 342 F.3d 1001, 1002 (9th Cir. 2003) ("Maria and Alejandro also are Mexican citizens and are without status."); *Medina-Chimal v. Holder*, 602 F. App'x 720, 721 (10th Cir. 2015) ("Javier Medina–Chimal is an alien without status.").

Tula Rubio's lack of status was precisely why both the immigration judge and the BIA determined that he was ineligible for cancellation of removal. ROA.052 ("This Court does not believe that the word status includes those who have no status or legal right to enter or remain in the United States."); ROA.007 ("The respondent has not demonstrated that the immigration officer conferred any status upon him at the port of entry in 1992."). If an undocumented alien is "without status," the panel's holding that an undocumented alien was admitted "in any status" must be incorrect.

3. The panel's structural interpretation of Section 1229b(a) is marred in several ways by its misunderstanding of "status." First, when the panel contrasts "lawfully admitted for permanent residence" (LPR status) in subsection 1229b(a)(1) (the 5-year residency provision) with subsection 1229b(a)(2)'s residence requirement "in any status" that does not include the word "lawfully," the panel overlooks the categorical status of an LPR.

"Lawfully admitted for permanent residence" is a specific type of status[6]—LPR status—rather than a generic phrase for any alien who is legally allowed to be present. *Holder v. Martinez Gutierrez*, 132 S. Ct. at 2015 ("The first paragraph of [1229b(a)] requires that the alien have held the status of a lawful permanent resident (LPR) for at least five years"). Because the word "lawfully" is part of a phrase connoting a specific status (LPR status), the absence of that word from Section 1229b(a)(2) does not support the conclusion that the panel draws. In fact, no other legally recognized statuses use the word "lawful" as a descriptor. *See* 8 U.S.C. §§ 1101(a)(15)(A)-(V). Obviously, one could not conclude that the absence of the word "lawful" from the description of the H-1-b nonimmigrant (business visitor) status under 8 U.S.C. § 1101(a)(15)(H)(1)(b) subsumes undocumented aliens.

The panel opinion also supports its flawed interpretation of "any status" by asserting that because the INA mentions "lawful status" or "unlawful status" in other provisions, "in any status" necessarily includes "undocumented status." This is also incorrect. Four of the cited provisions describe "lawful status" as a requirement that an alien applying for a benefit must have maintained following a prior legal entry, *i.e.* that he remained in "lawful status." *See* 8 U.S.C. §§ 1184(k)(3) (lawful status required to adjust from one legal status to another), 1254(a)(f)(4) (requiring lawful nonimmigrant status to qualify for temporary protected status ("TPS")), 1255(a),(c) (maintaining lawful status required to adjust to LPR status), and 1433(a)(5) (lawful admission and lawful status required of foreign-born child who enters United States to pursue

---

[6] "Congress has defined the phrase 'lawfully admitted for permanent residence' as a term of art meaning "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." INA § 101(a)(20), 8 U.S.C. § 1101(a)(20). This definition describes a particular immigration status…." *Lanier v. U.S. Atty. Gen.*, 631 F.3d 1363, 1366 (11th Cir. 2011); *see also* STEEL ON IMMIGRATION LAW § 2:23 (2014 ed.) ("The terms or concepts immigrant, permanent resident, permanent resident alien, "green card" holder, or "blue card" holder, are synonymous.").

citizenship). In other words, the premise of these provisions is a pre-existing legally conferred status held by the petitioner; if the petitioner fell out of such status, however, he would not be eligible for those types of relief. These provisions demonstrate that "unlawful status" means one has forfeited "lawful status," but they do not statutorily cover one who never had legal status to begin with.

One other provision of the INA, 8 U.S.C. § 1255a(a)(2)(A)-(B), is part of the 1982 amnesty law allowing people who previously resided unlawfully in the United States to obtain temporary or permanent legal residence. This section uniquely refers to prior "unlawful status," but the reason is obvious: residents who already had lawful status didn't need to resort to the amnesty law since ordinary immigration law channels were available to them. Only in this situation does it appear that Congress used "status" in reference to illegal aliens.

4. The panel opinion mistakenly relies on *In Re Blancas-Lara*, 23 I. & N. Dec. 458 (BIA 2002) to support its open-ended interpretation of "in any status." Blancas-Lara was admitted in 1986 with a border crossing card, which conferred nonimmigrant status. *Id.* at 460. The BIA addressed two questions: whether admission as a nonimmigrant, rather than as an LPR, met the seven year requirement under Section 1229b(a), and whether the nonimmigrant had to maintain that status for the entirety of the seven years.

With regard to the first question, the BIA noted that Section 1229b(a)'s predecessor statute likely would not have covered nonimmigrants, *see infra*, but that Section 1229b(a)'s language was materially different. *Id.* at 459. The BIA also explained that status was a "term of art" to denote a "certain legal standing," and that the use of the word "any" illustrated Congressional intent to "include admissions of nonimmigrants as well as immigrants." *Id.* Thus, the BIA held that an alien admitted in a nonimmigrant status, such as an F-1

11

student or H-1 employee, could qualify for cancellation of removal. *Id.* at 461. This holding reflects the customary understanding of "status" since both immigrants and nonimmigrants are documented aliens who have status recognized in the INA. *See* n.5 *supra.*

The BIA also held that once the nonimmigrant is admitted in a status, he need not maintain that status in order to claim cancellation of removal. That conclusion, however, in no way supports the panel opinion. Critically, the BIA noted that the status determination required by § 1229b(a)(2) is a snapshot in time at the moment of admission. *Id.* Section 1229b(a)(2) is not concerned with the alien's status after admission; therefore, so long as the alien was admitted into a legally recognized status, he could later lapse into "unlawful status" and still seek cancellation of removal. *Id.*[7] But that is not the same as allowing an undocumented alien without status to become eligible for cancellation of removal, because in the case of the lapsed unlawful status, the alien has still met the terms of § 1229b(a)(2) at the time he was admitted.

The Ninth Circuit has correctly read *Blancas-Lara* as holding that only immigrants and nonimmigrants have "any status" within Section 1229b(a)(2). In *Vasquez de Alcantar*, 645 F.3d 1097, the court analyzed *Blancas-Lara* and determined that an alien must be in either immigrant or nonimmigrant status at the date of admission. *Id.* at 1101-02. The court held that the "BIA

---

[7] Not only has the BIA reaffirmed this holding, but other circuits and academics have recognized the BIA's decision that so long as the alien was admitted in "status," he may later enter "unlawful status." *See e.g., Matter of Rotimi*, 24 I. & N. Dec. 567, 573 (BIA 2008) ("Section 240A(a) requires only 7 years of continuous residence after admission to the United States in any status, thereby including aliens who have fallen out of status during the prescribed period."); *Vasquez de Alcantar v. Holder*, 645 F.3d 1097, 1101-02 (9th Cir. 2011) ("[I]mmigrants and nonimmigrants alike, are eligible to accrue time towards the continuous residence requirement after they are lawfully admitted even if they are illegally present for some period of time thereafter."); Elwin Griffith, Admission and Cancellation of Removal Under the Immigration and Nationality Act, 2005 Mich. St. L. Rev. 979, 1063 (2005) ("The problem is that once the alien has been admitted, subsection (a)(2) does not require him to maintain lawful status.").

definition does not support Vasquez's argument that an approved I–130 visa petition provides status, because Vasquez is not categorically an immigrant or a nonimmigrant." *Id*. at 1102.

The BIA's holding that nonimmigrant status is sufficient at the date of admission is not the same as and does not support the panel's conclusion that an undocumented alien without status at his date of admission may be eligible for cancellation of removal. Indeed, *Blancas-Lara* compels the opposite inference: an undocumented alien admitted without status is not admitted "in any status" for purposes of Section 1229b(a).

5. Although a reference to the statute's legislative history is unnecessary in the absence of ambiguity, the amendments to the former cancellation of removal provision, INA Section 212(c) reinforce that "any status" covers only legally recognized immigrants or nonimmigrants. The Ninth Circuit explains:

> Section 212(c), the predecessor to § 1229b, required an alien seeking relief from removal to have "lawful unrelinquished domicile of seven consecutive years." This requirement caused much confusion among the executive and judicial branches—the BIA and courts of appeals disagreed about the status necessary to satisfy this requirement. Ultimately, Congress designed the dual requirement of a five-year legal permanent residency *and* seven-year continuous residence in any status, § 1229b(a)(1)(2), "to clear up prior confusion and to strike a balance between the conflicting interpretations ... by counting a limited period of time spent in non-permanent status [nonimmigrant] while still requiring at least five years of permanent resident status [LPR status]."

*Garcia-Quintero*, 455 F.3d at 1016 (internal citations omitted). *See also Martinez Gutierrez*, 132 S. Ct. at 2018-19 (recapping legislative history). The panel opinion asserts that the phrase "any status" illustrates an intent to provide cancellation of removal to those who were inadvertently admitted into the United States but were undocumented aliens. But the language was

intended to clear the bar for legal nonimmigrants other than LPRs with respect to cancellation of removal. Using "status" as a term of art, as explained *supra*, captures this clearly identified goal.

## CONCLUSION

"Status" is not a generic term covering undocumented aliens who were mistakenly waved through a port of entry. Rather, it is well understood in immigration law that a "status" is one of a legally defined set of categories that confers the right to be present in the United States. The phrase "any status" in § 1229b(a)(2) refers to all of these legal bases. In contrast, an undocumented alien is without any status at all. To interpret "admitted in any status" as encompassing people who were illegal aliens when accidentally admitted is to empower cancellation of removal for anyone who has been an LPR for five years and resided in the country for seven years after having only been "admitted." The panel had no authority to amend the law by depriving "status" of its customary meaning in immigration law and, worse, of *any* meaning in this provision.



**A True Copy**
**Certified Oct 28, 2015**

*Tyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**