# Matter of Rosalina CASTILLO ANGULO, Respondent

*Decided January 29, 2018*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) In removal proceedings arising within the jurisdiction of the United States Courts of Appeals for the Fifth and Ninth Circuits, an alien who was "waved through" a port of entry has established an admission "in any status" within the meaning of section 240A(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a)(2) (2012). *Tula-Rubio v. Lynch*, 787 F.3d 288 (5th Cir. 2015), and *Saldivar v. Sessions*, 877 F.3d 812 (9th Cir. 2017), followed in jurisdiction only.

(2) In removal proceedings arising outside the Fifth and Ninth Circuits, to establish continuous residence in the United States for 7 years after having been "admitted in any status" under section 240A(a)(2), an alien must prove that he or she possessed some form of lawful immigration status at the time of admission.

FOR RESPONDENT: Carlos A. Cruz, Esquire, Alhambra, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jeannette V. Dever, Associate Legal Advisor

BEFORE: Board Panel: GREER and O'CONNOR, Board Members. Concurring and Dissenting Opinion: PAULEY, Board Member.

O'CONNOR, Board Member:

In a decision dated July 24, 2015, an Immigration Judge denied the respondent's application for cancellation of removal under section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a) (2012). The respondent has appealed from that decision. The record will be remanded for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who claims that she first entered the United States in October 1991. In April 2003, she adjusted status to that of a lawful permanent resident. On January 12, 2010, the Department of Homeland Security ("DHS") served the respondent with a notice to appear, charging her with removability under section 212(a)(6)(E)(i) of the Act, 8 U.S.C. § 1182(a)(6)(E)(i) (2006), for smuggling or attempting to smuggle

an alien into the country.[1]  The respondent applied for cancellation of removal under section 240A(a) of the Act.  The Immigration Judge pretermitted the respondent's application, concluding that she did not establish that she "has resided in the United States continuously for 7 years after having been admitted in any status," as required by section 240A(a)(2) of the Act.

The respondent claims that she presented herself for inspection in 1998 and was waved through a port of entry by an immigration official.  Relying on *Matter of Quilantan*, 25 I&N Dec. 285 (BIA 2010), she argues that this entry constitutes an admission "in any status" under section 240A(a)(2) of the Act and that she began to accrue continuous residence for purposes of cancellation of removal after that date.

The Immigration Judge rejected the respondent's argument, concluding that *Matter of Quilantan* only applies to applications for adjustment of status under section 245(a) of the Act, 8 U.S.C. § 1255(a) (2006), so the respondent's alleged "wave through" entry in 1998 was not an "admission" for purposes of section 240A(a)(2) of the Act.  Based on this conclusion, the Immigration Judge found it unnecessary to determine whether the respondent had any status at the time of her alleged entry.  The Immigration Judge further determined that the respondent could not establish the continuous residence required by section 240A(a)(2), because her residence began to accrue when she adjusted her status in April 2003, and it was terminated under section 240A(d)(1) by service of the notice to appear in January 2010, approximately 3 months short of the requisite 7-year period.

During the pendency of the respondent's appeal, we requested and received supplemental briefing from the parties and amici curiae.[2]  The panel heard oral argument in this matter on March 22, 2017.[3]

---

[1]  The respondent does not challenge either her treatment as an applicant for admission who is subject to the grounds of inadmissibility under section 212(a) of the Act or her inadmissibility under section 212(a)(6)(E)(i) of the Act.  *See generally Matter of Guzman Martinez*, 25 I&N Dec. 845 (BIA 2012) (concluding that a lawful permanent resident who has attempted to smuggle an alien into the country may be treated as an applicant for admission).

[2]  We acknowledge and appreciate the supplemental briefs filed by the parties and amici curiae.

[3]  Following oral argument, Board Member Wendtland withdrew from the panel and was replaced by Board Member Greer, who has familiarized herself with the record of proceedings, including a transcript of the oral argument.

## II.  ANALYSIS

### A.  "Wave Through" Entry as an "Admission"

In *Matter of Quilantan*, 25 I&N Dec. at 291–92, we held that the term "admission" in section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2006), requires procedural regularity, rather than compliance with substantive legal requirements, and that an alien who entered after she had been "waved through" a port of entry had been "admitted" within the meaning of section 245(a) of the Act.  Contrary to the Immigration Judge's decision, we agree with the parties that our holding in *Matter of Quilantan* governs the definition of the term "admitted" in section 240A(a)(2) of the Act.  We therefore conclude that the respondent was "admitted" for purposes of section 240A(a)(2).

### B.  "Admitted in Any Status"

The only remaining issue is whether a "wave through" entry, like the one at issue in *Quilantan*, qualifies as an admission "in any status" within the meaning of section 240A(a)(2) of the Act.  The respondent argues that the term "status" includes unlawful status and that the word "any" in that provision should be read broadly to include all aliens admitted to the United States, whether in lawful or unlawful status.  In support of this contention, she relies on *Tula-Rubio v. Lynch*, 787 F.3d 288 (5th Cir. 2015), a decision of the United States Court of Appeals for the Fifth Circuit.  After oral argument was heard in this case, the Ninth Circuit, in whose jurisdiction it arises, issued a decision agreeing with the Fifth Circuit.  *Saldivar v. Sessions*, 877 F.3d 812 (9th Cir. 2017).  By contrast, the DHS contends that the phrase "admitted in any status" in section 240A(a)(2) requires an alien to show not only that he or she has been admitted, but also that the admission was attained by means of some lawful immigration status.  The Board has not issued a published decision addressing whether the "wave through" entry of an alien who was not entitled to any lawful status constitutes an admission "in any status."

Both parties argue that section 240A(a)(2) of the Act is unambiguous as to whether a "wave through" entry constitutes an admission "in any status." *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.* ("*Chevron*"), 467 U.S. 837, 842–43 (1984).  Having considered the statutory language and the various arguments in this case, we disagree and conclude that section 240A(a)(2) is ambiguous in this regard. *See Negusie v. Holder*, 555 U.S. 511, 518 (2009) (finding a provision ambiguous where it was not "clear that Congress had an intention on the precise question at issue"); *Nat'l R.R.*

*Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n.27 (1985) (noting that words are "ambiguous" if they are "reasonably susceptible of different interpretations").[4] We must therefore develop a reasonable interpretation of the provision, taking into account the Act as a whole. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *Chevron*, 467 U.S. at 843–44; *Matter of Casillas-Topete*, 25 I&N Dec. 317, 320 (BIA 2010).

In interpreting the appropriate meaning of section 240A(a)(2) of the Act, we consider it significant that the phrase "admitted in any status" differs from the wording of section 245(a), which requires only that an alien be "inspected and admitted" and makes no mention of the alien's "status" at admission. We generally presume that when Congress includes particular language in one section of a statute and excludes it from another, it does so intentionally. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993); *Russello v. United States*, 464 U.S. 16, 23 (1983). The fact that Congress included the phrase "in any status" in section 240A(a)(2) of the Act but not in section 245(a) suggests that it intended to give the statutes different meanings.

We are further influenced by the longstanding principle that, if possible, we should give effect to all parts of the statute. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (stating that a "statute should be construed so that . . . no part will be inoperative or superfluous, void or insignificant" (citations omitted)). Reading section 240A(a)(2) of the Act in the same way we do section 245(a)—as requiring only a procedurally regular "admission"— would render the phrase "in any status" meaningless. If Congress had intended section 240A(a)(2) to require only that an alien be "inspected and admitted," it would have used the same language as section 245(a). Indeed, Judge Kozinski made this exact point in his dissent in *Saldivar*, 877 F.3d at

---

[4] We find it telling that both parties base their argument on conflicting views of what is purportedly unambiguous statutory language. Similarly, we note that 5 of the 15 judges on the Fifth Circuit voted to rehear *Tula-Rubio* en banc, and of those, 4 joined in a published decision dissenting from the denial of rehearing en banc. *Tula Rubio v. Lynch*, 805 F.3d 185, 186−92 (5th Cir. 2015) (Jones, J., dissenting from the denial of rehearing en banc). We again find it telling that both the Fifth Circuit's panel decision and the published decision dissenting from the denial of rehearing en banc were based on conflicting views of what was deemed to be the unambiguous language of section 240A(a)(2) of the Act. *Compare Tula-Rubio*, 787 F.3d at 293−95 & nn.4−5, *with Tula Rubio*, 805 F.3d at 187 & n.4, 192. Finally, we note that the Ninth Circuit's decision in *Saldivar* contained a dissenting opinion that disagreed with the majority opinion's interpretation of the "in any status" language and held that, to the extent "any doubt remains about the meaning of status," deference was owed to the agency's interpretation. *Saldivar*, 877 F.3d at 820 (Kozinksi, J., dissenting). The fact that the words "in any status" have generated such sharp, conflicting views of what their plain meaning is by both judges and litigants alike strongly suggests that the statutory language is far from unambiguous.

819 (Kozinski, J., dissenting) ("If Congress intended to grant eligibility for cancellation of removal to people who deceive the border authorities into admitting them, it would have put a period after 'admitted' in section [240A(a)(2) of the Act] . . . ."). However, by adding the phrase "in any status" to section 240A(a)(2), Congress signaled that it intended to qualify the basic admission requirement of this provision. We therefore conclude that section 240A(a)(2) requires something more than a procedurally regular "admission."

The legislative history of section 240A(a) of the Act, and its precursor, former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), provides valuable insight into congressional intent regarding the requirement that an alien must be admitted "in any status" to establish eligibility for relief. *See United States v. Buckland*, 289 F.3d 558, 565 (9th Cir. 2002) (en banc) (noting that where Congress' intent cannot be determined from a plain reading of the statute, the court should "look to the congressional intent 'revealed in the history and purposes of the statutory scheme'" (citation omitted)). From the time of its enactment in 1952, relief under former section 212(c) was restricted to aliens who entered the United States in some lawful status. *See, e.g.*, *Madrid-Tavarez v. INS*, 999 F.2d 111, 112–13 (5th Cir. 1993) (holding that an alien who entered the United States illegally and had no legal right to be in the country could not qualify for a section 212(c) waiver); *Lok v. INS*, 548 F.2d 37, 41 (2d Cir. 1977) (concluding that section 212(c) relief requires an alien to have been *lawfully* domiciled for 7 years); *see also* S. Rep. No. 81-1515, at 382–84 (1950) (suggesting that section 212(c) should include the word "lawful" to clarify that only aliens who had entered the United States lawfully were eligible for relief).

There is no indication that Congress intended to eliminate this "lawful" entry requirement when it enacted the "residence" requirement in section 240A(a)(2) of the Act, the purpose of which was to reconcile two conflicting interpretations of former section 212(c) regarding an applicant's "lawful unrelinquished domicile" in this country. *See Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1016 (9th Cir. 2006) (noting that Congress enacted section 240A(a) of the Act "to clear up prior confusion and to strike a balance between the conflicting interpretations [of section 212(c)]" (citation omitted)), *abrogated on other grounds by Medina-Nunez v. Lynch*, 788 F.3d 1103 (9th Cir. 2015); *see also Holder v. Martinez Gutierrez*, 566 U.S. 583, 592–93 (2012). In any case, under both interpretations of former section 212(c), aliens were afforded relief only if they possessed a lawful status when they entered the United States. *See, e.g.*, *Castellon-Contreras v. INS*, 45 F.3d 149, 153 (7th Cir. 1995); *Chiravacharadhikul v. INS*, 645 F.2d 248, 250–51 (4th Cir. 1981).

Additionally, the legislative history of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, indicates that even though Congress omitted the word "lawfully" in section 240A(a)(2), it intended to limit eligibility for relief to aliens who had been *lawfully admitted* in any status. *See* H.R. Rep. No. 104-828, at 213 (1996) (Conf. Rep.) (indicating that section 240A(a) applied to lawful permanent residents who had resided continuously in this country for 7 years after "being lawfully admitted in any status"); H.R. Rep. No. 104-469, at 232 (1995) (same); *see also* S. Rep. No. 104-249, at 106, 125 (1996) (proposing changes to section 212(c) and a new section 244(a) of the Act entitled "Cancellation of Deportation," both of which limited relief to aliens who had resided in the United States continuously for at least 7 years after being "lawfully admitted").

This legislative history also indicates that at the time Congress was considering section 240A(a)(2), Government officials within the former Immigration and Naturalization Service ("INS") interpreted this provision as being limited to aliens who were lawfully admitted. *See Removal of Criminal and Illegal Aliens: Hearing Before the Subcomm. on Immigration and Claims of the H. Comm. on the Judiciary*, 104th Cong. 14–15 (1995) (statement of T. Alexander Aleinikoff, Gen. Counsel, INS) (discussing the proposal to limit eligibility for lawful permanent resident cancellation of removal to aliens who have "resided in the U.S. after *lawful admission* for 7 years" (emphasis added)); *Proposals to Reduce Illegal Immigration and Control Costs to Taxpayers: Hearing Before the S. Comm. on the Judiciary*, 104th Cong. 63 (1995) (statement of Hon. Doris Meissner, Comm'r, INS) (same). Thus, Congress only intended that aliens who possessed lawful status upon admission would be eligible for cancellation of removal.

Based on the foregoing, we conclude that the most natural reading of the phrase "admitted in any status" in section 240A(a)(2) of the Act is that the alien must have possessed some form of lawful status at the time of admission that would allow him or her to enter into the United States as an immigrant or nonimmigrant. This interpretation is consistent with our prior decision in *Matter of Blancas*, 23 I&N Dec. 458, 460 (BIA 2002), where we held that the term "status" in section 240A(a)(2) "denotes someone who possesses a certain legal standing, e.g., classification as an immigrant or nonimmigrant." *See also Saldivar*, 877 F.3d at 820 (Kozinski, J., dissenting) ("Limiting any status to legal status is not merely *a* plausible meaning, it is the *only* plausible meaning."); *Tula Rubio v. Lynch*, 805 F.3d 185, 187–88 (5th Cir. 2015) (Jones, J., dissenting from the denial of rehearing en banc) (holding that the phrase "'any status' refers exclusively to the legal categories enumerated in the [Act] and conferred upon aliens"). It is also consistent with *Matter of Quilantan*, 25 I&N Dec. at 293, where we rejected the DHS's

claim that section 245(a) of the Act requires an alien to have been admitted in a particular status, largely because it had offered no support for that claim. However, in this instance the wording of section 240A(a)(2) strongly suggests that an alien's status upon admission is relevant to determining whether his or her entry started the 7-year residence clock.

Requiring an alien to have possessed a lawful status at the time of entry also prevents possible abuse of this form of relief. "Wave through" entries are by definition undocumented events. The respondent's proposed interpretation of section 240A(a)(2) of the Act opens the door for all lawful permanent resident aliens who illegally cross the border to claim, years after the fact, that they were "waved through" a port of entry and are therefore eligible for cancellation of removal based on a claim that is impossible for the DHS to refute. *See Saldivar*, 877 F.3d at 821 (Kozinski, J., dissenting) (noting that the majority's decision creates "perverse incentives" because "[o]bviously, there would be no record contradicting [an alien's claimed "wave through"], so the incentive to lie would be powerful and the chance of getting caught nil"). The respondent's view would essentially relieve aliens of the statutory burden of establishing that he or she has satisfied all the eligibility requirements for cancellation of removal under section 240A(a) of the Act. *See* section 240(c)(4)(A)(i) of the Act, 8 U.S.C. § 1229a(c)(4)(A)(i) (2012); *see also* 8 C.F.R. § 1240.8(d) (2017). It is unlikely that Congress would have intended such a result.

We also disagree with the view of the Fifth and Ninth Circuits that an alien can be admitted in an unlawful status. *See Saldivar*, 877 F.3d at 816; *Tula-Rubio*, 787 F.3d at 293−94 & n.5. When an alien seeks admission at the border, an immigration official admits the alien only upon a determination that he or she is lawfully entitled to enter the United States. *See* section 212(a)(7) of the Act, 8 U.S.C. § 1182(a)(7) (2012) (rendering inadmissible those aliens who are not in possession of valid entry documents at the time they seek admission); section 235(b)(1)(A) of the Act, 8 U.S.C. § 1225(b)(1)(A) (2012) (providing that an immigration officer may order the expedited removal of an arriving alien who lacks valid entry documents); *see also* section 235(a)(3) of the Act (requiring all applicants for admission to be inspected). Because it is precisely the nature of the alien's status that determines whether he or she is entitled to admission, we cannot agree with the conclusion of the Fifth and Ninth Circuits that an alien can be "admitted in" a status that would not entitle him or her to admission.[5]

---

[5] For this reason, we also disagree with the argument that the term "in any status" serves a purpose similar to the phrase "irrespective of such alien's status" in section 208(a)(1) of the Act, 8 U.S.C. § 1158(a)(1) (2012). Although an alien's status is irrelevant in the asylum context under section 208, it is key to determining whether an alien is entitled to admission. Thus, we do not consider these phrases to have the same meaning.

In some cases, an alien may be "admitted" in error, and he or she may be removable based on that erroneous admission. *See* section 237(a)(1)(A) of the Act, 8 U.S.C. § 1227(a)(1)(A) (2012) (providing that an admitted alien who was inadmissible at the time of entry or adjustment of status is removable); section 237(a)(1)(G)(i) of the Act (providing that an alien who obtained admission by virtue of a fraudulent marriage is removable); *see also* section 237(a)(1)(H) of the Act (providing a waiver of removability for aliens who obtained admission by fraud or misrepresentation). Indeed, as we noted in *Matter of Quilantan*, 25 I&N Dec. at 291, requiring an "admission" to be in compliance with substantive legal requirements would "significantly affect the applicability of [these] other statutory provisions of the Act." *See also id.* at 295 (Filppu, concurring) (noting that while the majority's reading of the word "lawful" in the definition of admission in section 101(a)(13)(A) of the Act "is not the most natural reading, . . . it is the reading that emerges from an overall examination of the statute," including sections 237(a)(1)(A) and (H) of the Act, which would be "rendered meaningless" by a contrary interpretation).

However, interpreting the phrase "admitted in any status" to require that an alien be admitted in some form of lawful immigration status does not create the same inconsistencies with the other statutory provisions we discussed in *Quilantan*, because the language of section 240A(a)(2) of the Act is different from that in section 245(a). Instead, if there are any statutory conflicts or inconsistencies, they are created by the view of the Fifth and Ninth Circuits that aliens can be admitted in an unlawful status, which is in tension, if not direct conflict, with sections 235(a)(3) and 212(a)(7) of the Act (requiring all aliens seeking admission to the United States to be inspected and providing that aliens without a valid entry document are deemed inadmissible, respectively). These two provisions reflect a clear congressional intent that only aliens who are lawfully entitled to enter the United States are to be admitted.

It is beyond dispute that border officers are not supposed to admit undocumented aliens. The view of the Fifth and Ninth Circuits that Congress not only would have intended for this to happen but would have triggered an alien's eligibility for relief on such an admission in an unlawful status turns on its head the presumption of regularity that courts presume public officers to "have properly discharged their official duties." *Kohli v. Gonzales*, 473 F.3d 1061, 1068 (9th Cir. 2007) (citation omitted); *see also United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926); *cf. Lai Haw Wong v. INS*, 474 F.2d 739, 742 (9th Cir. 1973) (holding that a "mistaken admission conferred no status, permanent resident or otherwise," on the aliens in question). Stated bluntly, we fail to see how this could be.

We further disagree with the Fifth and Ninth Circuits that the use of the phrase "lawfully admitted" in section 240A(a)(1) of the Act, but not in section 240A(a)(2), indicates that Congress intended the latter to apply to aliens admitted in an unlawful status. *See Saldivar*, 877 F.3d at 817; *Tula-Rubio*, 787 F.3d at 294–95. Section 240A(a)(1) requires that an applicant "ha[ve] been an alien *lawfully admitted for permanent residence* for not less than 5 years." (Emphasis added.) The phrase "lawfully admitted for permanent residence" is a term of art that refers to "the status of having been lawfully accorded the privilege of residing permanently in the United States." Section 101(a)(20) of the Act. Unlike the use of the term "admitted" in section 240A(a)(2), the phrase "lawfully admitted for permanent residence" in section 240A(a)(1) does not refer to a physical entry into the United States. *See Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1053 (9th Cir. 2014) (holding that the term "lawfully admitted for permanent residence" refers to all lawful permanent residents, regardless of whether they obtained the status at the time of a physical entry or adjusted status while in the United States). Thus, the inclusion of the word "lawfully" in section 240A(a)(1) but not in section 240A(a)(2) does not indicate that the latter includes aliens erroneously admitted with no legal status. *See Saldivar*, 877 F.3d at 819−20 (Kozinski, J., dissenting) (noting that it does not make sense to contrast "lawfully admitted for permanent residence" with "admitted in any status" because the former refers to the acquisition of a legal status while the latter refers to a physical admission at the border). Rather, "admitted in any status" clarifies that, unlike section 240A(a)(1), section 240A(a)(2) of the Act requires that the alien made a physical admission at a port of entry, but not that he or she obtained the status of "an alien lawfully admitted for permanent residence" at the time of that admission.

As a consequence, we will only adhere to *Tula-Rubio* and *Saldivar* in cases arising in the Fifth and Ninth Circuits.[6] In all other circuits that have yet to address the issue, we hold that aliens must show that they possessed some form of lawful immigration status at the time of admission to establish that they were "admitted in any status" under section 240A(a)(2) of the Act.

## C. Application to the Respondent

The Immigration Judge pretermitted the respondent's application based on the legal determination that a "wave through" entry can never be an

---

[6] The Fifth and Ninth Circuits based their decisions on what they found to be the unambiguous meaning of section 240A(a)(2) of the Act. *Saldivar*, 877 F.3d at 816; *Tula-Rubio*, 787 F.3d at 293−95 & nn.4−5. Thus, we are bound by those holdings, notwithstanding our disagreement with them. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

"admission in any status" under section 240A(a)(2) of the Act, so she did not hear testimony on the respondent's claimed "wave through" entry or on any other issues involving the respondent's eligibility for cancellation of removal. Because the Ninth Circuit has concluded that a "wave through" entry is an "admission in any status," we will remand the record to the Immigration Judge for further consideration of the respondent's eligibility for cancellation of removal under section 240A(a). Although the DHS argues that the respondent waived her right to present testimony and other evidence at the final hearing, we conclude that the respondent sufficiently raised all issues before the Immigration Judge and thus preserved them for appeal and a further hearing.[7]

The respondent bears the burden of proving that she was waved through at a port of entry in 1998 and that she maintained continuous residence for 7 years following that entry. *See* section 240A(a)(2) of the Act; *see also* section 240(c)(4)(A) of the Act. On remand, the parties should submit testimonial and other evidence regarding this and other issues relevant to the respondent's eligibility for cancellation of removal under section 240A(a) of the Act.

**ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*CONCURRING AND DISSENTING OPINION*: Roger A. Pauley, Board Member

I concur in the result, which the majority only reaches because it acknowledges that the decision of the United States Court of Appeals for the Ninth Circuit in *Saldivar v. Sessions*, 877 F.3d 812 (9th Cir. 2017), which holds that a wave through constitutes an "admission in any status" for purposes of section 240A(a)(2) of the Act, is binding on the Board since this case arises in that circuit. However, unlike the majority, I conclude that both the Ninth Circuit and the Fifth Circuit, whose similar holding in *Tula-Rubio v. Lynch*, 787 F.3d 288 (5th Cir. 2015), the Ninth Circuit followed, arrived at the correct result, even though, like the majority, I disagree with some aspects of those courts' reasoning.

---

[7] Although the respondent's counsel declined to present testimony at the final hearing, he did so in anticipation of the Immigration Judge's ruling on a purely legal question that was potentially determinative of the respondent's statutory eligibility for relief under section 240A(a) of the Act. The Immigration Judge specifically noted that if she did not pretermit the application, she would continue the matter for testimony.

Specifically, I concur to the extent the majority holds that a wave through "admission," as that term is defined by section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2012), as the "lawful entry of the alien into the United States after inspection and authorization by an immigration officer," must be in *some* lawful status and it disagrees with the above-cited decisions that such an admission may be in an unlawful status. I agree that no immigration officer acting in a procedurally regular manner intends to grant entry into the United States to an alien who that officer believes has no lawful status.[1]

That being so, if the respondent was waved through as she alleged,[2] and she was thereby "admitted," as we held in *Matter of Quilantan*, 25 I&N Dec. 285 (BIA 2010), and as all agree, the question becomes whether she was "admitted in any status" within the meaning of section 240A(a)(2) so as to be eligible for cancellation of removal. The majority decision declares that in all circuits except the Fifth and Ninth, "aliens must show that they possessed some form of lawful immigration status at the time of admission to establish that they were 'admitted in any status' under section 240(A)(a)(2) of the Act." *Matter of Castillo Angulo*, 27 I&N Dec. 194, 202 (BIA 2018). This holding (or dicta, depending on how one regards it), from which I dissent, is based on the mistaken premise that "admission in any status" requires that the concededly lawful status under which the respondent was admitted *must later be identified*.[3]

I would conclude that the language "admitted in any status" does not require that the admitted alien's status be identified in order to meet the requirement of section 240A(a)(2). While the majority argues that the phrase "in any status" is redundant if not construed to require that the particular lawful status be identified, such an argument is unpersuasive in the context of that provision. The Supreme Court has repeatedly held in cases where a statute uses the expansive word "any" that there is no basis in the text for limiting the application of the statute to only certain types of instances. *See, e.g.*, *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218−19 (2008); *see also Hanif v. Att'y Gen. of U.S.*, 694 F.3d 479, 485−86 (3d Cir. 2012) (noting that

---

[1] Contrary to our dicta in *Matter of Blancas*, 23 I&N 458, 460 (BIA 2002), that the concept of status "denotes someone who possesses a certain legal standing," it is clear that the Act in some instances does contemplate that a "status" may be unlawful. *See, e.g.*, section 245(c)(2) of the Act, 8 U.S.C. § 1255(c)(2) (2012) (rendering ineligible for adjustment of status an alien "who is in unlawful immigration status"). However, the fact that a status can be unlawful does not mean that an "admission" can be in an unlawful status.

[2] I concur with the majority that remand is appropriate to determine, as a matter of fact, whether the respondent was waved through.

[3] I note that the majority decision has the consequence of creating a conflict in outcomes depending on the circuit in which the issue arises.

the "in any status" language could reflect congressional recognition that an alien may initially be admitted to the United States in some status other than as a lawful permanent resident and "immediately begins accumulating time following his initial admission, *regardless of the status*" (emphasis added) (quoting *Nelson v. Att'y Gen. of U.S.*, 685 F.3d 318, 323 (3d Cir. 2012)).

Furthermore, as the Ninth Circuit observed in *Saldivar*, a comparison of sections 240A(a)(1) and 240A(a)(2) of the Act suggests that the purpose of "in any status" is to contrast the two provisions and to clarify the continuous residence requirement. *Saldivar*, 877 F.3d at 817. Section 240A(a)(1) states that an alien must have been "lawfully admitted for permanent residence for not less than 5 years." This provision is immediately followed by section 240A(a)(2), at issue here, which notably omits the word "lawfully" when referring to an alien's admission and states that the admission can be "in any status." This suggests that "in any status" was merely meant to emphasize that an alien admitted into the United States in *any* lawful status, even if not as a lawful permanent resident, is included within the relevant provision. *See Ali*, 552 U.S. at 226 (finding that an arguably superfluous provision was included "to remove any doubt").

Moreover, the generous nature of the eligibility requirements for those aliens who satisfy the section 240A(a)(1) requirement of having been a lawful permanent resident for at least 5 years demonstrates the unlikelihood that Congress would have intended the initial "admitted in any status" element to necessitate that the particular lawful status of original admission be identified. We held in *Matter of Blancas*, 23 I&N Dec. 458 (BIA 2002), that the initial admission in any status requirement need not be followed by a period of continuous lawful status, so long as the alien later satisfies the requirement of continuous residence for at least 5 years as a lawful permanent resident. In *Blancas*, we found further that an initial admission via a border crossing card, perhaps the most minimal form of lawful status, satisfied the provision's requirement for an admission in any status. It is hardly likely that, where Congress has made an alien eligible for cancellation of removal who was admitted with a border crossing card, it would have demanded that an alien who necessarily was admitted in *some* lawful status through a wave through, as the majority concedes, must later identify the particular lawful status in which he or she was admitted in order for the 7-year period of continuous residence required by section 240A(a)(2) to commence.

Furthermore, the majority's holding that an alien who was waved through must establish the particular status that the alien possessed when he or she was waved through, in order to give meaning to the words "in any status" in section 240A(a)(2), is inconsistent with *Matter of Quilantan*, where we held that a wave through was an "admission" within the meaning of section

101(a)(13)(A) of the Act.[4]  The majority relies for its conclusion on the assertion that some aliens who are waved through may, in fact, substantively lack lawful status when determined retrospectively.  This almost certainly is true, given that immigration officers who wave through occupied vehicles inevitably will make mistakes.  But that does not mean the occupants of those vehicles have not been "admitted" under *Quilantan*, because any subsequent determination that a waved-through alien lacked a lawful status at the time does not retrospectively render the alien as not having been properly "admitted."

The only area in which we have found that an alien's initially granted status may be negated ab initio is in the case of a lawful permanent resident whose status as such was wrongly conferred.  *Matter of Koloamatangi*, 23 I&N Dec. 548 (BIA 2003).  But even there our holding was that such an alien could not show that he or she had been "lawfully admitted for permanent residence," not that such an alien had not been "admitted" in the procedurally regular sense meant by *Matter of Quilantan*. Thus, for example, if an alien were wrongly allowed to enter with a border crossing card that the immigration officer failed to notice had expired, that would not detract from the fact that such an alien had been inspected and authorized to enter the United States and thus had been "admitted in any status" for purposes of section 240A(a)(2); nor would it have changed the result in *Matter of Blancas*.  The same is true for an alien who was admitted via a wave-through admission that was later determined to have been substantively mistaken.

I therefore respectfully dissent from the majority's conclusion otherwise and would find that, in any circuit, an alien is eligible to seek cancellation of removal if he or she establishes an admission via a wave through, even if the alien cannot demonstrate the particular lawful status under which admission was authorized, and even if it is later found that he or she had no lawful status at that time.

---

[4]   While our decision was in the context of establishing eligibility for adjustment of status, the Department of Homeland Security has properly conceded at oral argument in this case that the holding in *Quilantan* is not limited to that form of relief and applies to the concept of admission in section 240A as well.